[No. 16005.  Department Two.  November 1, 1920.]

THE STATE OF WASHINGTON, *on the Relation of H. G.
Wells Lumber Company, Plaintiff,* v. THE
SUPERIOR COURT FOR KING COUNTY,
*Respondent.*[1]

CORPORATIONS (195) — ACTIONS AGAINST — VENUE — "TRANSACTING
BUSINESS"—DELIVERY OF GOODS—ACTS OF OFFICERS OR AGENTS.  A
corporation having a mill and principal place of business in one
county, is not "transacting business" in another county, within the
meaning of the act fixing the venue, from the fact that it ships lum-
ber to such county subject to inspection upon its arrival, nor by
visits of its officers for the purpose of checking up deliveries, nor by
its agreement to pay the cost of creosoting certain of the lumber,
which cost was merely deducted from the purchase price.

Application filed in the supreme court July 30, 1920,
for a writ of prohibition to prevent the superior court
for King county, Allen, J., from granting a change of
venue.  Denied.

*Alexander, Bundy & Swale,* for relator.

*John C. Hogan,* for respondent.

FULLERTON, J.—On April 28, 1920, the relator, H. G.
Wells Lumber Company, as plaintiff, began an action
in the superior court of King county against the West-
ern American Company, as defendant, to recover in
damages for the breach of three several contracts to
deliver lumber.  At the time it appeared in the action,
the defendant filed an affidavit of merits and demanded
that the cause be transferred to Grays Harbor county
for trial; averring in its application that it was a resi-
dent of, and was transacting business in, Grays Har-
bor county; that it was not transacting business, and
had no office for the transaction of business, in King
county at the time the causes of action set forth in the
complaint, or either of them, arose, and that no person

[1]Reported in 193 Pac. 229.

resided therein on whom process against it might be served. Issue was taken by the relator on the facts stated for the transfer of the cause; each of the parties filing affidavits in support of their respective contentions. At the hearing the relator also introduced certain oral testimony. At the conclusion of the hearing, the court announced its intention to transfer the action, whereupon the relator applied to this court for a writ prohibiting it from so doing. An alternative writ was granted, and the controversy now before us is over the question whether the writ should be made peremptory.

The record shows, without substantial dispute, the following facts: The residence and place of business of the relator is in King county. The defendant's mill and its principal place of business is in Grays Harbor county. In May, 1919, the relator sent to the defendant three several orders for lumber, directing it to ship specified quantities of lumber to the relator's customers, the first of whom resided in the state of Michigan, the second in the state of Minnesota, and the third in the state of Montana. The defendant accepted the orders in writing, and thereafter shipped to the parties directed parts of the lumber ordered. The remainder of the lumber it failed to ship, finally refusing to complete the shipments, so it is alleged in the complaint, on the 6th day of March, 1920. It appears that, between February 15, 1919, and July 23, 1919, the defendant maintained an office in the city of Seattle, King county, for the transaction of business, finally closing the same on the last named date. It appears also that, on May 10, 1919, the defendant entered into a contract with the Ames Ship Building and Dry Dock Company whereby it undertook to sell and deliver to that company at Seattle some four million feet of lumber. Certain of this lumber, some one hundred and fifty thou-

sand feet, was to be subjected to a creosote treatment. With reference to this, the contract contained the following provision:

"It is understood that this price includes all creosoted lumber. We (the purchaser) are to have this lumber creosoted to our requirements, at the best possible price prevailing at the time, and the charge for creosoting to be billed back to your account."

The contract also provided that the lumber was to be subject to inspection at the purchaser's yard. This part of the contract, however, was not carried out literally. Some controversy having arisen over the first of the deliveries, an inspector was placed by the purchaser in the defendant's yard at Aberdeen and the lumber was inspected before or at the time it was loaded for shipment. It also appeared that, during the course of the shipments, an officer of the defendant went to Seattle on a few occasions to check up the deliveries with the purchaser.

It was also alleged in an affidavit of an officer of the relator that the defendant had, at the time of the commencement of the action, a quantity of lumber near a creosoting plant in the city of Seattle which it held for removal or sale; that it had, during the months March, April and May of the year 1920, employed and paid agents and representatives to tally and inspect lumber belonging to it then in King county which was shipped by it from its mill at Aberdeen to that county for delivery; and that, after the defendant closed its office for the transaction of business in King county, it immediately employed the Pacific Lumber Agency, a corporation having and maintaining offices for the transaction of business in King county, to act as its agent and representative in that county. These allegations are denied by affidavits filed by the defendant's officers, and the allegation that it employed the Pacific Lumber

Agency to act as its agent and representative is also denied in an affidavit of an officer of that company.

By the terms of the statute (Rem. Code, § 206), the defendant is subject to suit in a transitory action in any county of the state where it transacts business, or transacted business at the time the cause of action arose, or in any county in which it has an office for the transaction of business, or in any county where a person resides upon whom process against it may be served, and the question presented is whether the record shows the existence of either of these conditions.

On the disputed questions of fact we are clear that the decided weight of the evidence is with the defendant. It is clear, also, that the defendant did not have an office for the transaction of business in the county of King at the time the cause of action arose, and that no person resided therein, at the time of the commencement of the action, on whom process against it could be served. There is left, therefore, only the question whether the dealings of the defendant with the Ames Ship Building and Dry Dock Company constituted the transaction of business by it in the county of King within the meaning of the statute. That the mere shipment of lumber to the company named, from the defendant's mill at Aberdeen to the company's place of business in King county, although subject to its inspection on arrival, would not be the transaction of business in that county, we are clear. As the defendant's counsel well say, a contrary rule would subject the mill company to suit in any county in the state to which it ships lumber, as lumber is almost uniformly shipped subject to the condition that it complies in quality and kind to the terms of the order, which of itself implies inspection by the purchaser. There is, of course, a distinction between the instant case and the general instances cited, as in the one the pur-

chaser's inspection is probably conclusive as between the parties, while in the others the purchaser's inspection is not so. Yet the governing principle must be the same. If the one constitutes a transaction of business at the place to which the lumber is shipped, the other must of necessity do so likewise. There remains then the question whether the visits made by the officers of the defendant to the ship building company's offices in King county for the purpose of checking up deliveries constitutes a doing of business in King county. But these acts, as shown by the record, were only occasional or casual. It was shown that it happened not more than three or four times during the course of the delivery of the lumber. As we said in *Rich v. Chicago, Burlington & Quincy R. Co.*, 34 Wash. 14, 74 Pac. 1008, a corporation to be within the rule must transact within the county some substantial part of its ordinary business, continuous in the sense that it is distinguished from merely casual or occasional transactions. Clearly, these acts were not part of the defendant's ordinary business.

The relator lays stress on that part of the contract between the defendant and the ship company which relates to creosoting certain of the lumber. But an inspection of the contract shows that the defendant did not undertake the performance of this work, nor make the ship company its agent to perform the work for it. The work was to be done by the purchaser to its own satisfaction, the defendant agreeing only that the cost thereof should be applied on the purchase price of the account as a whole. It neither performed the actual work nor authorized the purchaser to perform the work for it. Its agreement to pay the cost of the work could in no sense be the doing of business in the county where the work was performed.

It is needless to review the cases cited by the relator. In none of them were the facts here shown presented, nor do any of them sustain the principle for which the relator here contends.

The alternative writ heretofore issued is quashed and a peremptory writ denied.

· HOLCOMB, C. J., PARKER, BRIDGES, and MACKINTOSH, JJ., concur.