[No. 28599. Department Two. January 26, 1942.]

THE STATE OF WASHINGTON, *on the Relation of United States Trust Company, Plaintiff,* v. J. M. PHILLIPS, *as Judge of the Superior Court for Lewis County, Respondent.*[1]

*Tanner, Garvin & Ashley* and *E. L. Skeel,* for relator.

*W. H. Abel* and *John D. Ehrhart,* for respondent.

[1]Reported in 121 P. (2d) 360.

JEFFERS, J.—Relator, United States Trust Company, filed in this court an application for a writ of certiorari, directed to Honorable J. M. Phillips, a judge of the superior court of the state of Washington, and the superior court of the state of Washington for Lewis county, requiring them and each of them to certify to this court a true and correct transcript of so much of the record and proceedings in a cause pending in the superior court for Lewis county, entitled "Keith J. Johnson and Dewey Johnson, as Johnson Brothers, Plaintiffs, v. United States Trust Company, a corporation, Defendant," as was before and considered by Judge Phillips in making an order dated October 31, 1941, denying defendant's motion for change of venue from Lewis county to King county. Upon the filing of this application and a supporting affidavit of Paul Ashley, one of the attorneys for relator, the chief justice of this court, on November 6, 1941, issued a writ directed to the above-named judge and court, directing them and each of them to certify and return to this court, on December 12th, 1941, the record referred to in the application, or show cause why they should not do so.

In compliance with the writ, Judge Phillips has certified to this court the record made and considered by him in passing on the motion for change of venue.

In referring to the action brought in Lewis county, we shall refer to Johnson Brothers as plaintiffs, and United States Trust Company as defendant. In speaking of the certiorari proceedings, it will be understood that relator is the trust company, and, while Judge Phillips is the nominal party respondent, the real parties are Johnson Brothers.

The action in Lewis county was instituted for the purpose of obtaining a judgment against defendant for damages claimed to have resulted to plaintiffs because

of the unlawful termination by defendant of a contract for sale of timber, made and entered into on August 19, 1938, between the trust company, as trustee for Samuel Hill estate, Edgar N. Hill, R. Auzias de Turenne, and Frank Terrace, sellers, and plaintiffs as purchasers. The contract was signed not only by E. N. Hill, as president of the trust company, and by plaintiffs, but also by Frank Terrace, E. N. Hill, and R. Auzias de Turenne, individually. The land upon which the timber is located is in Lewis county, Washington.

The hearing before Judge Phillips was upon affidavits. The affidavits filed by plaintiffs in opposition to the motion for change of venue purported to show that one Joe Tregoning, a resident of Morton, Lewis county, Washington, was locally in charge of the renting and repairing, and had general supervision, of what will be referred to as the "Lindberg property." These affidavits especially refer to dealings with Joe Tregoning relative to certain buildings on the Lindberg property. The affidavit of Johnson Brothers, plaintiffs, was also to the effect that Tregoning was reputed to be the agent of defendant trust company, in eastern Lewis county. In addition to the statements above referred to, the affidavit of John D. Ehrhart, one of the attorneys for plaintiffs, was to the effect that in January, 1940, defendant entered into a contract with West Fork Logging Company for the sale of certain lands and timber in Lewis county.

The affidavits filed by defendant in opposition to those filed by plaintiffs are to the effect that defendant is a Washington corporation, with its principal place of business in King county, and that it does not now have, and has never had, an officer, trustee, director, salesman, employee, or agent, who resided in, or had an office or headquarters in, Lewis county; that the holding of legal title, as trustee, to certain lands in

Lewis county is not an important part of the affairs of the trust company, but, on the contrary, is a minor and incidental part of its affairs, all of which are conducted in counties other than Lewis county. It further appears conclusively from the affidavits of E. N. Hill, president of defendant corporation, John P. Garvin, its secretary, and C. A. Philbrick, its vice-president, that the Lindberg property was acquired by E. N. Hill in 1927, with money furnished by Samuel Hill, and that this property, from the time of its acquisition, has been operated and managed by E. N. Hill for the benefit of himself and Samuel Hill.

It further appears from the affidavits of E. N. Hill and Joe Tregoning that, about the 1st of January, 1928, Joe Tregoning was employed by E. N. Hill to act as rental agent for the Lindberg property; that all supplies and material necessary for the repair and upkeep of this property have been paid for by E. N. Hill personally, by checks drawn upon his account in the Morton State Bank, and all money collected by Tregoning has been deposited by him to the credit of E. N. Hill, in the Morton State Bank.

The affidavit of Joe Tregoning is further to the effect that all his dealings in regard to this property have been with E. N. Hill, and that he has never had any contact with defendant trust company, and that he has never held himself out as, or stated to any person that he was, the agent for or representative of the trust company.

Attached to the affidavit of E. N. Hill are letters from E. N. Hill to Tregoning, and letters from Tregoning to Hill, concerning this property, and covering the years the property has been under the control of Mr. Hill. Also attached to the Hill affidavit are checks signed by E. N. Hill personally, drawn on his account

in the Morton bank, covering the items referred to in the affidavit filed by plaintiffs.

The affidavit of E. L. Skeel, who drew the contract with West Fork Timber Company, purports to show that, at the time this contract was drawn, it was affiant's understanding that the Lindberg property was not a part of the timber trust in Lewis county, of which defendant was trustee, and that affiant arranged through R. Auzias de Turenne, who had a power of attorney from E. N. Hill, to include in the contract certain rights for road easements and other specified purposes, on and across section 25 of the Lindberg property.

While plaintiffs were by the trial court given an opportunity to file affidavits controverting the statements contained in defendant's affidavits, they did not see fit to do so, but relied on those already filed, to which we have referred.

It will be noticed that in the instant case the trial court did not specifically base its refusal to grant a change of venue upon any of the statutory grounds provided in Rem. Rev. Stat., § 209 [P. C. § 8545], as appears from the memorandum opinion filed herein, which reads as follows:

"From a consideration of the pleadings and the evidence introduced in this case, the court is of the opinion that the cause should be tried in Lewis county, where the contract was to be performed. If the case were being tried in King county, and it should be thought necessary to view the premises in order to obtain a better understanding of the contract, the court or jury might have to go from Seattle up on the Cowlitz river to look at the work done. The provisions of the contract seem to imply that it would be necessary for the defendant [Trust Company] to have a representative present at the logging operations. It is difficult for the court to see how the defendant could know that there had been a forfeiture of the

contract unless it obtained its information on the ground."

We assume the particular provisions of the contract which the court must have had in mind are found in paragraphs four and six thereof. Paragraph four provides in part that, if in the conduct of logging operations the purchasers (Johnson Brothers) have left uncut any merchantable timber, piling or poles, which, under the provisions of the contract, should have been cut, the trust company may cruise such timber remaining uncut. It was not shown by any affidavit herein that defendant had at any time made such a cruise, or that it was likely to.

Paragraph six provides in part that the trust company may, *if it so elects,* have and keep a representative on the ground ·during the progress of logging operations, who shall have access to all parts of the work, for the purpose of checking and verifying the reports of operations thereunder. It was not shown that defendant had ever elected to have or keep such a representative on the ground.

Paragraph three of the contract provides in part that, in the logging operations, the scaler shall keep the customary record of the number, contents, and grade of all logs, shingle timber, piling, or poles cut, and shall furnish copies of his report daily to the trust company, duly certified as to their accuracy. Paragraph fifteen provides in part that all reports, remittances, and correspondence for the trust company shall be addressed to United States Trust Company, Trustee, Lyon Building, Seattle, Washington.

The trial court, on October 31, 1941, entered the following order: "For good cause shown, the defendant's motion for change of venue is denied."

As we see it, there are two questions presented herein for our consideration: (1) Is this a transitory

action? (2) Can it be said that the trust company was a resident of Lewis county, having in mind Rem. Rev. Stat., § 205-1 [P. C. § 8542-1], which provides:

"An action may be brought in any county in which the defendant resides, or, if there be more than one defendant, where some one of the defendants resides at the time of the commencement of the action. For the purpose of this act, the residence of a corporation defendant shall be deemed to be in any county where the corporation transacts business or has an office for the transaction of business or transacted business at the time the cause of action arose or where any person resides upon whom process may be served upon the corporation, unless hereinafter otherwise provided."

We think the first question to be answered is whether this action is local or transitory. Our statutes do not use the words "local" or "transitory," but Rem. Rev. Stat., § 204 [P. C. § 8541], provides:

"Actions for the following causes shall be commenced in the county in which the subject of the action, or some part thereof, is situated: —

"1. For the recovery of, for the possession of, for the partition of, for the foreclosure of a mortgage on, or for the determination of all questions affecting the title or for any injuries to real property; . . . "

It is evident that the instant case does not come within any of the above mentioned provisions, as the prayer of the complaint is as follows:

"Wherefore plaintiffs pray judgment upon their complaint: in the sum of $5,000 cash paid; for the return of said $5,000 note, or if not returned, for the amount thereof; for the amount necessarily and reasonably expended by them for road construction, in the sum of $17,526.04; for lost profits in the sum of $147,066, and for costs."

This action, not coming within the provisions of § 204, must, in our opinion, fall within the provisions of § 205-1, *supra,* and, under this section, must be

brought in the county, or one of the counties, where the corporation transacts business, or has an office for the transaction of business, or transacted business at the time the cause of action arose, or where any person resides upon whom process may be served upon the corporation.

This action is one for damages for claimed breach of contract to convey standing timber. While, as we have said, our statutes do not use the terms "local" and "transitory," in so far as this case is concerned we shall refer to those actions mentioned in § 204, *supra*, as local, and those specified in § 205-1, as transitory.

The authorities generally do not consider an action such as the instant one local. We find in 67 C. J. 70, § 113, the following statement:

"Although a contract relates to land or interests therein, an action thereon need not be brought where the land is situated. An action for damages for breach of a contract to make title or for breach of covenant is transitory."

For a discussion of this subject, see, also, 27 R. C. L. 792, § 14.

That the instant case is transitory and must be brought in the county or counties where defendant resides, is, we think, established by our own cases.

In the case of *English v. Gibbons*, 79 Wash. 210, 140 Pac. 322, we stated:

"Plaintiff prays for an accounting of the logging business, and a judgment against defendant for one-half of the profits thereof; that defendant be required to convey to him one-half of the timber land, and that the defendant be compelled to convey to the plaintiff all of the other land conveyed by the bank to the defendant.

"The defendant is a resident of King county, and upon the commencement of this action, filed a motion for a change of venue to King county, which was

granted. This is the first error assigned. An action for an accounting or an action to declare a trust in lands, is a transitory action, and the court did not abuse its discretion when it made the order changing the venue of the action from Skagit county to King county. *State ex rel. Scougale v. Superior Court,* 55 Wash. 328, 104 Pac. 607, 133 Am. St. 1030."

In the *Scougale* case, *supra,* plaintiffs brought an action in the superior court for Pierce county, asking for the following relief: (1) That their title be established to an undivided one-third interest in the land and timber; (2) that the land and timber be sold and the proceeds divided between the parties according to their several interests; and (3) for a judgment for damages. The opinion states:

"Thereupon the defendants in due form applied to the court for a change of venue to Snohomish county, the place of their residence. The relators [plaintiffs] resisted the application, on the ground that the title to real and personal property was involved, and the action was local, under the provisions of our code, Bal. Code, § 4852 (P. C. § 308). [Bal. Code, § 4852, is the same as Rem. Rev. Stat., § 204.] This objection was overruled, and the application allowed."

This court, in denying a writ of mandate directing the lower court to proceed with the trial, further stated:

"The respondent next urges that the action is transitory. In its final analysis the purpose of the action, aside from the question of damages, is to establish and enforce a trust in real and personal property. In such cases the decree acts *in personam,* and the action is a transitory one. *State ex rel. Campbell v. Superior Court,* 7 Wash. 306, 34 Pac. 1103."

If the actions above referred to were transitory, surely the instant case, which is for damages only, must be so considered, and being such an action, must, in

our opinion, be brought in the county, or one of the counties, where defendant resides.

Was the defendant a resident of Lewis county, within the meaning of § 205-1, *supra*?

It is not disputed that service of the summons and complaint was made upon defendant in King county; neither is it disputed that the contract was signed by defendant in King county. It appears from the contract that all reports of the logging operations, all payments made thereunder, and all correspondence in regard thereto were to be sent or directed to defendant, as trustee, in the Lyon building, Seattle.

We are satisfied that this record conclusively shows that the Lindberg property was not in fact a part of the timber trust of which relator was trustee, that it at no time considered this property as part of such trust, and that it at no time exercised any control over, or participated in, the management of the Lindberg property, through Joe Tregoning, or any other person, or at all. We are further satisfied that, from this record, the only acts in connection with the timber trust participated in by relator were the execution of the contract with Johnson Brothers, the subsequent forfeiture of the contract, and the making of a subsequent contract with West Fork Timber Company. That these acts do not constitute a "transacting of business," under § 205-1, *supra,* we believe to be clearly established by the decisions of this court.

In the case of *State ex rel. American Savings Bank & Trust Co. v. Superior Court,* 116 Wash. 122, 198 Pac. 744, we held that while the trust company, whose principal place of business was in King county, had foreclosed a mortgage on property in Okanogan county, it was not transacting business in Okanogan county by thereafter taking possession of the orchard property and proceeding to cultivate, prune, spray, and care for

same, extending the irrigation system for the better irrigation and care of the orchards, harvesting the crop therefrom for the years 1919 and 1920, and continuing in such possession and care of the property, through its employees, for the sole purpose, as the relator alleged, of preserving the value of the orchards and preventing the deterioration of the property until such time as the lands could be sold at prices and upon terms satisfactory to relator.

While as we have stated it was not shown herein that relator ever had a cruiser on the ground or a representative at the scene of the logging operations, we doubt seriously that, even had that been done, such act or acts alone would have constituted a transaction of business in Lewis county. See *State ex rel. Wells Lumber Co. v. Superior Court,* 113 Wash. 77, 193 Pac. 229, wherein we stated:

"As we said in *Rich v. Chicago, Burlington & Quincy R. Co.,* 34 Wash. 14, 74 Pac. 1008, a corporation to be within the rule must transact within the county some substantial part of its ordinary business, continuous in the sense that it is distinguished from merely casual or occasional transactions."

See, also, *State ex rel. Yakima Trust Co. v. Mills,* 140 Wash. 357, 249 Pac. 8; *State ex rel. State Savings & Loan Ass'n v. Superior Court,* 142 Wash. 296, 252 Pac. 923, on this question.

We have examined the authorities cited by respondent, particularly the cases of *Cohagen v. Big Bend Land Co.,* 109 Wash. 404; 186 Pac. 1070, and *Bankers Holding Corp. v. Maybury,* 161 Wash. 681, 297 Pac. 740, and we are of the opinion that those cases are not controlling here.

It may be stated here that, in the case of *State ex rel. Seattle Baseball Club v. Superior Court,* 193 Wash. 326, 75 P. (2d) 929, we reviewed the prior statutes and

decisions, and held that, in view of the change contained in chapter 173, Laws of 1927, p. 194, the old rule laid down in *McMaster v. Advance Thresher Co.,* 10 Wash. 147, 38 Pac. 760, should no longer be considered as the rule in this state, but that, when a corporation has been sued in the wrong county, the corporation's action is not to seek a writ of prohibition against the court wherein the action was wrongfully commenced, but to seasonably apply for a change of venue to the proper county, under the same rules as a natural person.

The cases cited by us herein were decided prior to the *Seattle Baseball Club* case, and were cited only for the purpose of sustaining our conclusion that, under the showing made in the instant case, it does not appear that relator is now, or ever has been, a resident of Lewis county.

In the instant case, relator appeared in the action started in Lewis county, and demurred to the complaint, at the same time filing an affidavit of merits and moving that the case be removed to King county.

We are of the opinion that the refusal of the trial court to grant relator's motion for a change of venue was not based upon reasonable grounds, and that the refusal of the court to grant relator's motion was a manifest abuse of its discretion.

The order under review is reversed, and the cause remanded to the superior court, with directions to grant the motion for change of venue.

ROBINSON, C. J., MILLARD, BEALS, and SIMPSON, JJ., concur.