[No. 29607. Department One. June 28, 1945.]

THE STATE OF WASHINGTON, on the Relation of Anacortes Veneer, Inc., Plaintiff, v. JOHN I. O'PHELAN, as Judge of the Superior Court for Pacific County, Respondent.[1]

[1]Reported in 160 P. (2d) 515.

*R. W. Maxwell* and *Gordon E. Lake,* for relator.

*Fred M. Bond,* for respondent.

JEFFERS, J.—Relator, Anacortes Veneer, Inc., filed in this court, March 2, 1945, an application for a writ to review the action of Honorable John I. O'Phelan, judge of the superior court of the state of Washington for Pacific county, in refusing to grant relator's motion for change of venue from Pacific county to Skagit county.

In its application, relator asked that a writ issue, directed to Judge O'Phelan, requiring him to certify to this court a full transcript of the record and proceedings in cause No. 10069 of the records of the superior court for Pacific county, entitled "Clarence Norberg, Plaintiff, v. Anacortes Veneer, Inc., a corporation, and George L. Gardner, Defendants," leading up to and considered by the court in making and entering an order dated February 16, 1945, denying relator's motion for change of venue from Pacific county to Skagit county.

Upon the filing of the above application, it appearing that due notice had been served upon the attorney for the plaintiff that relator would present to this court such an application on March 2nd, the Honorable Walter B. Beals, chief justice of this court, issued a peremptory writ directed to Judge O'Phelan, directing and commanding him to certify and send to this court, on or before May 14, 1945, a transcript of the record and proceedings in the cause aforesaid considered by him in making the order denying relator's motion for change of venue, in order that such record might be reviewed by this court. In compliance with the writ, Judge O'Phelan has certified to this court the record as made and considered by him in passing upon relator's motion.

It may be stated here that George L. Gardner, one of the defendants in the cause hereinbefore referred to, was not a party to the motion for change of venue and did not appear in this proceeding.

While Judge O'Phelan is the nominal party respondent in this proceeding, the real party respondent is Clarence

Norberg, and hereinafter when we refer to respondent it will be understood we are referring to Mr. Norberg.

As a part of his return, Judge O'Phelan has certified to this court the first amended complaint filed by Mr. Norberg in the aforesaid cause; wherein it is alleged in substance as follows: That, at all times mentioned in the complaint, plaintiff was and now is a resident of Pacific county, Washington; that the defendant Anacortes Veneer, Inc., was at all times therein mentioned and still is a Washington corporation, doing business in ·Pacific county; that defendant George L. Gardner was and still is a resident of Portland, Oregon.

It is further alleged that, between the *10th day of September, 1942,* and the 10th day of September, 1943, plaintiff, at the special instance and request of defendants and in pursuance of an oral agreement made and entered into in Pacific county, furnished and delivered to defendants services in selecting and obtaining for defendants certain timber products, which services were performed in Pacific county and were of the reasonable and agreed price of two hundred dollars per month, or a total of twenty-four hundred dollars; that such services were all performed by the plaintiff for and on behalf of defendants; that the agreed price has not been paid, or any part thereof except the sum of twelve hundred dollars, which was paid by defendant George L. Gardner, the same being paid in Pacific county, which, according to the terms of the agreement, was the place of payment; that there is now due and owing to plaintiff from defendants the sum of twelve hundred dollars, together with interest at the rate of six per cent per annum from September 10, 1943; that demand has been made upon defendants for the payment of twelve hundred dollars, but defendants have failed to pay the same.

On December 28, 1944, relator filed in the aforesaid cause a motion for change of venue to Skagit county, claiming its right to such change of venue under Rule 1, Rules of Practice, 18 Wn. (2d) 31-a, and Rem. Rev. Stat., § 209 [P. P. C. § 102-11], "that the county designated in the complaint is not the proper county." This motion is supported

by the affidavit of E. A. Backman, president of relator, and is in substance as follows: That defendant corporation is a Washington corporation, having its office and principal place of business in Anacortes, Skagit county, Washington; that the corporation neither transacts business nor has an office in Pacific county for the transaction of business, nor did it transact business in Pacific county at the time the alleged cause of action arose; that no person resides in Pacific county upon whom process against the corporation may be served.

Clarence Norberg filed an affidavit in opposition to the motion for change of venue, which in substance is as follows: That prior to September 10, 1942, and thereafter, Anacortes Veneer, Inc., was transacting and doing business in its ordinary course of business in Pacific county; that it was purchasing logs at such time from various parties, some from George L. Gardner and some from other loggers in Pacific county, and was obtaining logs and timber products in Pacific county for several months, and is still transacting business in that country. It further appears from this affidavit that the agreement referred to in the first amended complaint was made in Pacific county, and that services rendered thereunder were performed by plaintiff in Pacific county; that, according to the terms of the contract, the services to be rendered were to be performed in Pacific county; that the transactions on behalf of defendants and plaintiff were such that defendants were actually transacting business in Pacific county at such time; that plaintiff has secured from the secretary of state a certified copy of the articles of incorporation of Anacortes Veneer, Inc., and that he has filed same with the clerk for inspection of the court and all parties.

There can be no question but that, under the articles of incorporation, defendant, Anacortes Veneer, Inc., was authorized to acquire, own, and sell timber and timberlands, and to own, lease, and operate logging camps, logging roads, etc.; for § 2 of Art. 2, was set out and made a part of the affidavit, and provides:

"To acquire, own, sell, mortgage and hypothecate timber and timber lands and to own, lease and operate logging camps, logging roads and railroads and to generally engage in the logging business . . ."

E. A. Backman filed a supplemental affidavit, which in substance shows: That service in the action was made upon the corporation at its office and principal place of business in Anacortes; that at all times between August 1, 1942, and December 15, 1944, the usual, ordinary, and continuous business of defendant was the manufacture and resale of plywood veneer at its mill in Anacortes; that defendant has maintained an office for the transaction of business in Anacortes and likewise in Seattle; that incidental to the manufacture of plywood, and to supply its mill, defendant has purchased peeler logs in various parts of the state, the bulk of these logs having been secured in Skagit, King, Thurston, and Pierce counties; that defendant has not sold its products in Pacific county nor conducted any part of its manufacturing process therein.

It further appears from this affidavit that defendant corporation has not purchased logs or timber products in Pacific county from George L. Gardner or any other party, nor has it conducted any logging operations in Pacific county, by contract or otherwise, nor did defendant enter into any contract with plaintiff in Pacific county; that no officer or agent of defendant with authority to enter into employment contracts entered into any such contract in Pacific county, to be performed in Pacific county, and that no services were performed by plaintiff in Pacific county on behalf of defendant.

It further appears from the affidavit that in December, 1942, Anacortes Veneer, Inc., entered into a contract with George L. Gardner, in Portland, Oregon, Gardner being a resident of that city, which contract concerned only the purchase by defendant of logs belonging to Gardner, which logs, according to the agreement, were to be delivered, received, scaled and title to pass either at Olympia or Tacoma; that the terms of the Gardner contract did not require

or permit defendant to conduct any logging operations or transact any business in Pacific county.

Clarence Norberg filed what might be termed a reply affidavit to the supplemental affidavit of Mr. Backman. The following is the substance of Mr. Norberg's affidavit: That Mr. Backman was never in Pacific county to affiant's knowledge, and that affiant had no dealings with Mr. Backman; that defendant corporation had two agents, Fred Johnson and L. C. Van Zandt, and the contract referred to in the complaint was made and entered into by these agents, acting for the corporation, and by affiant, at the Canary Cottage, in Pacific county, just a few days before the work was begun in Pacific county; that at the time of making the contract there were present defendant's agent Van Zandt, George L. Gardner, of Portland, Everett Cox, and affiant, and the matter of the agreement was fully discussed at that time; that pursuant to the agreement, which provided that the work to be done thereunder was to be performed in Pacific county, especially near Holcomb, affiant proceeded to carry out in good faith the terms of the agreement.

It further appears from this affidavit that defendant corporation and George L. Gardner had dealings regarding their logs, and it was agreed by and between the parties at the Canary Cottage that affiant should carry on and assist the logging operations at Holcomb, and see that the logs were shipped as rapidly as possible, and to assist in every way he could, and also to buy additional peelers for defendants; that on December 6, 1943, George L. Gardner wrote a letter to L. C. Van Zandt, which in part is as follows:

"In the fall of 1942 you, Fred Johnson and I met Clarence Norberg at Raymond and discussed the matter of having him try and get some logs for the Anacortes Veneer. As I recall it you were to pay him one-half and I was to pay one-half for running down logs and other matters in connection with the logging at Holcomb. I have paid him $1200.00.

"He said he had heard nothing from you and I ask him

if he had written you and he said he had. I would appreciate your cleaning this matter up.

> "Yours very truly,
> "(Signed) GEORGE L. GARDNER."

It further appears that on December 9, 1943, Mr. Van Zandt wrote a letter to Mr. Gardner, the material part of which states:

"In reply to your letter of December 6, 1943, the understanding that I have between Clarence Norberg and myself was that he was to buy logs for Anacortes Veneer for 25¢ per thousand other than the ones you were putting in. At that time, I was doing all of the buying for Anacortes Veneer. . . .

"In regard to my agreement that came up between Mr. Johnson and yourself on the logging at Holcomb, it was my understanding, although I am not too clear on it, that Mr. Norberg was looking after your interests there. I would rather leave that question to Mr. Johnson. . . .

"At that time I was the sole buyer and judge of all their deals away from the mill. I hardly think anybody else would enter into it. . . .

"I am sending Mr. Norberg a copy of this letter for his information.

> "(Signed) L. C. VAN ZANDT."

It further appears from this affidavit that Mr. Norberg assisted in the logging operations and assisted in shipping at least ten million feet of logs from the locality of Holcomb, Pacific county, and in addition obtained several thousand feet of peeler logs for Anacortes Veneer and George L. Gardner, at their request; that, after the services were all performed by affiant, the only argument he ever had with defendant corporation or Mr. Van Zandt was that the latter claimed his services should be paid for at so much per thousand feet and not so much per month; that as the logs were shipped out they were sent to Anacortes Veneer at Olympia, where the logs were sorted, after which part of them were forwarded to the plant of Anacortes Veneer at Anacortes; that Fred Johnson was one of the duly authorized officers of Anacortes Veneer, and he knew that the work was being carried on in Pacific county, for and on behalf of Anacortes Veneer and George L. Gardner.

No oral testimony was taken before the trial court, but the record considered by the court was made up of the first amended complaint and the affidavits hereinabove set out. Based upon this record, the trial court denied the motion of Anacortes Veneer for a change of venue.

From this point on we shall refer to Anacortes Veneer as relator and to Mr. Norberg as respondent.

Relator contends the court erred in holding that relator transacted business in Pacific county within the meaning of Rem. Rev. Stat., § 205-1, at the time the alleged cause of action arose; in holding that relator at any time transacted business in Pacific county within the meaning of § 205-1, *supra;* in holding that the burden to prove it did not transact business in Pacific county rested on relator; and in holding that relator was required to establish by a strong preponderance of the evidence that it did not transact business in Pacific county.

Rem. Rev. Stat., § 205-1, provides:

"An action may be brought in any county in which the defendant resides, or, if there be more than one defendant, where some one of the defendants resides at the time of the commencement of the action. For the purpose of this act, the residence of a corporation defendant shall be deemed to be in any county *where the corporation transacts business* or has an office for the transaction of business or *transacted business at the time the cause of action arose* or where any person resides upon whom process may be served upon the corporation, unless hereinafter otherwise provided." (Italics ours.)

Rem. Rev. Stat., § 209, provides:

"The court may, on motion, in the following cases, change the place of trial, when it appears by affidavit or other satisfactory proof,—

"1. That the county designated in the complaint is not the proper county; . . ."

We are concerned in this proceeding only with those portions of § 205-1, *supra,* italicized; in other words, the question here presented is whether it reasonably appears from the affidavits filed that relator transacts business in Pacific county or transacted business in Pacific county at the time

the alleged cause of action arose, within the meaning of the statute. If it does so appear, then we are of the opinion the action of the trial court must be affirmed; if it does not so appear, then the order of the trial court must be reversed, with instructions to grant relator's motion.

Relator contends that the affidavits filed in its behalf conclusively show that it has at no time and is not now transacting business in Pacific county; that the acts alleged by respondent, even if admitted, are not sufficient to show that relator transacted business in Pacific county.

Relator in its brief states that the trial court relied upon the case of *State ex rel. Snoboy-Pacific Distributors v. Superior Court,* 158 Wash. 7, 290 Pac. 331, and held it to be decisive, and that the trial court in so holding committed the two errors last assigned.

The order denying relator's motion does not set out any of the reasons which influenced the court in making the order. However, the trial court certified to this court its memorandum opinion, and from that we get the only information relative to what the court considered.

We are satisfied that the trial court, in stating that it thought the *Snoboy* case, *supra,* was decisive, was comparing the contract in the cited case, claimed to have been made in Asotin county, and which was the basis for the claim that Snoboy was transacting business in Asotin county, with the allegations in the instant case relative to the claimed contract made and entered into in Pacific county and the services to be performed and which were performed thereunder.

We find nothing in this record which convinces us that the trial court required relator to sustain the burden of proving that it did not transact business in Pacific county by proof which "preponderated strongly" in favor of relator.

Respondent was contending that the contract alleged to have been made with relator and the operations of the parties thereunder were sufficient to show that relator was transacting business in Pacific county. Relator denied there was such a contract, and it also apparently contended

that, even if there was such a contract as claimed by respondent, that was not sufficient under the statute to warrant the court in concluding that relator was transacting business in Pacific county.

We shall quote at some length from the *Snoboy* case, for we are of the opinion that the trial court in the instant case was justified in relying upon the cited case.

In the *Snoboy* case, John Bloodsworth was a resident of Asotin county, engaged in the business of growing fruit, his orchard being in Asotin county. The petitioner, Snoboy, was a corporation engaged in the business of selling fruit for growers on consignment. Its principal place of business was in Seattle. Respondent, Bloodsworth, began an action against petitioner in Asotin county to recover the value of certain apples which he alleged he had consigned to petitioner for sale *under a contract entered into in Asotin county* with petitioner, and for which petitioner had accounted only in part. Petitioner gave notice of appearance and moved the court for a change of venue to King county. The respondent resisted the motion, and numerous affidavits were filed by the respective parties in support of and in opposition to the motion. The trial court, at the hearing, refused to grant the motion, and the writ sought in this court was a writ prohibiting the trial court from proceeding further in the cause than to grant the change of venue. The opinion quotes Rem. Rev. Stat., § 205-1, and then continues:

"Under the statute, it will be observed, the petitioner is suable in the county of Asotin only in the case that one or more of the following conditions is found to exist: (1) That it transacts business in that county; (2) that it has an office therein for the transaction of business; (3) that it transacted business therein at the time the cause of action arose; or (4) that some person resides therein 'upon whom process may be served upon the corporation.'

"The motion of the petitioner was based upon the ground that neither of the stated conditions applied to its situation. In the affidavits filed with the motion, it denied that it transacts business in Asotin county, denied that it had an office therein for the transaction of business, denied that it transacted business therein when the alleged cause of

action arose, and denied that any person resided therein on whom process against it could be served. In his answering affidavit, the respondent did not dispute the first, second and fourth of these conditions. He relied on the third of the conditions to maintain the action in Asotin county. His affidavits tended to show that the petitioner, through its duly authorized agent, came into Asotin county while his fruit crop was maturing, and there entered into a contract with him to take his fruit on consignment, sell it to the best advantage possible, and account to him in Asotin county for the proceeds of the sale, deducting only its reasonable charges for the service; further contending that he did deliver his fruit to the petitioner in pursuance of the contract, and that the petitioner did not account to him for the fruit it received.

"The petitioner filed affidavits in reply to those filed by the respondent. In these it denied the contract alleged by the respondent, and denied that it received for sale, or sold for the respondent, any of his fruit. It averred affirmatively, that the respondent consigned his fruit for sale to another corporation, and that, if it sold any of his fruit at all, it sold it under consignment by that corporation, and that it fully accounted to that corporation for all fruit it received on consignment from it. Respondent filed rebuttal affidavits denying the affirmative matters. The trial court heard the motions wholly upon these affidavits;

. . .

"From the foregoing, it is apparent that the question here presented is not the usual question presented where an individual defendant is sued in a county other than the county of his residence, and asks to have the place of trial removed to the county of his residence. In the latter instances, especially in transitory actions, the question involved is usually only one of residence; that is to say, the inquiry is in what county does the defendant reside. But it is not so where a corporation is the defendant, and asks for a removal on the ground of residence. The legislature, as we have noted above, has not seen fit to place a corporation defendant in this respect on a plane with an individual defendant, but has given it special exemptions not accorded to the individual defendant. It cannot be sued in any county in the state as can an individual, but can be sued only in designated counties not usually or entirely dependent upon its place of residence. So that, when it is sued in a county other than the county of its residence, the question involved is not one of residence merely, but is

rather, can the defendant be sued in the county in which the action is commenced under any of the rules the statute has prescribed."

We now come to that part of the opinion in the cited case upon which we assume relator bases its contention that the trial court, by relying on the cited case, committed the error hereinbefore mentioned. We quote from the opinion:

"It may be that, if the proofs on the issue presented preponderated strongly in favor of the petitioner and were correspondingly weak in favor of the other side, the court would not compel it to defend in the county in which it was sued, even though it left the final determination of the question to the triers of the fact. But the proofs here, as we read the record, do not thus strongly preponderate. They consist principally of averments on one side and denials on the other, with no such showing of circumstances as to make the one contention more probable than the other.

"The record presenting this situation, we feel constrained to concur in the holding of the trial court."

■ In our opinion, all the above-quoted statement means is that, in a proceeding of this character, where there is a direct conflict in the proof offered, we will not reverse the action of the trial court unless the proof strongly preponderates against the trial court's decision. This is no new theory.

■ We are of the opinion that, under the showing made in the instant case, there was a reasonable basis for the conclusion reached by the trial court that the affidavits filed by respondent show a sufficient legal basis for holding that relator was transacting business in Pacific county, and transacted business therein at the time this alleged cause of action arose. It not appearing to us, under the showing made and after a consideration of all the affidavits, that the contention of relator is more probable than that of respondent, we are unable to say that the trial court erred in refusing to grant relator's motion.

Other cases from this jurisdiction holding that one transaction of a corporation in the county where suit against it

is instituted is sufficient to justify the trial court in concluding that the corporation was transacting business in such county are *Hayworth v. McDonald,* 67 Wash. 496, 121 Pac. 984, and *Strandall v. Alaska Lbr. Co.,* 73 Wash. 67, 131 Pac. 211.

In support of its contention that, under the facts shown herein, relator was not transacting business in Pacific county, relator cited *Rich v. Chicago B. & Q. R. Co.,* 34 Wash. 14, 74 Pac. 1008; *State ex rel. Wells Lbr. Co. v. Superior Court,* 113 Wash. 77, 193 Pac. 229; and *State ex rel. U. S. Trust Co. v. Phillips,* 12 Wn. (2d) 308, 121 P. (2d) 360. We have examined the cited cases, and we are of the opinion they are not controlling herein, because of the difference in the factual situations presented.

Relator emphasizes the fact that we have held that:

"A corporation to be within the rule, must transact, within the state, some substantial part of its ordinary business, continuous in the sense that it is distinguished from merely casual or occasional transactions."

It is true the foregoing statement will be found in some of our cases, beginning with *Rich v. Chicago B. & Q. R. Co., supra.* The above language has not, however, always been used. Thus in *State ex rel. Yakima Trust Co. v. Mills,* 140 Wash. 357, 249 Pac. 8, we find this statement:

"We have adopted the rule that, for a corporation to come within this statute, the business transacted by it must be a part of its usual and ordinary business, and not transactions which are merely incidental to that business."

We call attention to the case of *State ex rel. Guernsey-Newton Co. v. Superior Court,* 136 Wash. 653, 241 Pac. 303, wherein is discussed the rule last above stated. In the cited case we stated:

"In the case at bar the acts done in Yakima county were acts in the ordinary and customary business of the relator. As stated in 12 R. C. L., § 49, the test is:

" 'Is the corporation engaged in the transaction of that kind of business, or any part thereof, for which it was created and organized? If so, it "does business," within the meaning of the constitutions and statutes.' "

In the instant case, the purchase of logs and the operation of logging companies was not incidental to relator's business, but was a part of it and was one of the purposes for which relator was organized, as shown by its articles of incorporation. It is apparent, we think, that relator could not manufacture plywood veneer without logs.

We are of the opinion that, on the record before us, it cannot be said that the trial court erred in refusing to grant relator's motion for a change of venue, and the order of the trial court denying relator's motion is therefore affirmed.

BEALS, C. J., MILLARD, STEINERT, and GRADY, JJ., concur.