984 P.2d 1041 (1999)
96 Wash.App. 547
WASHINGTON STATE BANK, a state chartered bank, Respondent,
v.
MEDALIA HEALTHCARE L.L.C., a Washington limited liability company, Appellant.
No. 41263-9-I.
Court of Appeals of Washington, Division 1.
July 12, 1999.
As Amended on Denial of Reconsideration August 27, 1999.
*1042 Peter Samuel Holmes, Brian W. Esler of Miller, Nash, Wiener, Hager & Carlsen, Seattle, WA, for Appellant.
Thomas Henry Oldfield, Attorney At Law, Tacoma, WA, for Respondent.
WEBSTER, J.
Respondent Washington State Bank filed a conversion action in King County against Appellant Medalia Healthcare, L.L.C., to recover the monetary value of secured collateral that Dr. Thomas Shelton, the borrower, sold to Medalia subsequent to the Bank's secured interest. The King County Superior Court granted the Bank's motion for a voluntary dismissal. Medalia appeals the King County Superior Court's order denying Medalia's motion for an award of attorney fees pursuant to RCW 4.84.330 or RCW 4.84.185.
The day after the King County action was dismissed, the Bank filed a similar conversion action in Pierce County. After ruling that it had subject matter jurisdiction, the Pierce County Superior Court granted the Bank's partial motion for summary judgment on liability. Medalia stipulated to damages and appeals Pierce County's rulings concerning jurisdiction and liability on the conversion claim.
This consolidated appeal presents four issues: (1) did Pierce County have subject matter jurisdiction over the Bank's conversion claim for monetary damages where the personal property allegedly converted was in King County; (2) did Medalia convert the collateral it purchased from Shelton; (3) is Medalia entitled to an award of attorney fees under RCW 4.84.330; and (4) is Medalia entitled to an award of attorney fees under RCW 4.84.185? We hold that: (1) Pierce County had subject matter jurisdiction because a conversion action for monetary recovery is transitory in nature and not subject to RCW 4.12.010 requirements; (2) Medalia committed conversion not by simply purchasing the encumbered collateral but by interfering with the Bank's right to possession; (3) Medalia is not entitled to attorney fees under RCW 4.84.330 because conversion is not an action on a contract; and (4) Medalia is not entitled to attorney fees under RCW 4.84.185 because the Bank's conversion action was not frivolous. Therefore, we affirm all rulings below.

BACKGROUND
A. Events Giving Rise to the Parties' Dispute
In March 1994, the Bank loaned $150,000 to Dr. Thomas Shelton. Shelton gave the Bank a promissory note and a security interest in all the accounts, contract rights, equipment and general intangibles of his practice. The Bank filed a UCC-1 Financing Statement with the Washington State Department of Licensing on March 28, 1994. The security agreement prohibits Shelton from selling the collateral and requires that proceeds in the event of a sale be immediately delivered to the Bank. An unauthorized sale is a default by the debtor. The promissory note given to the Bank by Shelton provides that Shelton will pay attorney fees and legal expenses related to the Bank's collection in the event of default. The security agreement between the Bank and Shelton provides that Shelton will pay for the Bank's attorney fees and legal expenses incurred in connection with enforcement of the agreement.
*1043 In October 1995, Shelton sold his practice to Medalia. Medalia paid Shelton $1,000 for supplies, $30,194 for furniture and equipment, and $24,498 for intangibles, for a total of $55,692. Medalia failed to conduct a UCC lien search and was unaware that the Bank had a prior security interest in the property. The Bank was not notified that Shelton sold the practice to Medalia.
The bank declared Shelton's loan in default on September 18, 1996. The Bank and Medalia learned about each other's interests in the property in October 1996 when Shelton filed a Chapter 13 bankruptcy petition.

B. Correspondence Between the Parties

A series of written correspondence, and apparently some telephone conversations, occurred between the parties involved. The Bank first presented a copy of its financing statement to Medalia on December 6, 1996. On January 13, 1997, a letter from the Bank sets out its conversion argument and requests Medalia to "reconsider its position," an apparent reference to a prior telephone conversation. The Bank's letter of January 28, 1997, rejects Medalia's apparent offer to purchase the Bank's interest for $10,000 but also indicates a willingness to negotiate. Medalia's letter of January 28, 1997, states its position that the Bank has no conversion claim. The Bank's letter of February 11, 1997, again sets out its conversion argument and claims that it is entitled to $55,692, the amount Medalia paid Shelton for the practice. On February 12, 1997, Medalia acknowledges the Bank's perfected security interest in the tangible assets but asserts that the collateral is "in the possession of a Chapter 13 debtor under the U.S. Bankruptcy Code, 11 U.S.C. sec. 101, et seq." and raises the prohibitions on creditor actions under 11 U.S.C. sec. 362 and 18 U.S.C. sec.sec. 152 and 157 as reasons for not turning the collateral over to the Bank. KCP at 55. Noting that the Bank has twice rejected Medalia's offer (presumably for $10,000), Medalia states that it is not interested in further negotiation. On February 24, 1997, another letter from Medalia's counsel states that "Medalia has consistently acknowledged the Bank's prior security interest and offered to pay fair market value for that interest to obviate the need for stay relief and other expenses." PCP at 195. The letter adds: "If the [bankruptcy] stay is lifted, I assume that you will first attempt to coordinate with Dr. Shelton and Medalia to pick up the collateral for liquidation before filing an unnecessary (and frivolous) lawsuit." PCP at 195. After obtaining relief from the bankruptcy stay, the Bank's letter of March 21, 1997, sent to whom we assume is Shelton's counsel,[1] states:
Washington State Bank herewith makes demand on Thomas Shelton for possession of the collateral subject of that Commercial Security Agreement dated March 24, 1994, to include the equipment, accounts, and general intangibles of his medical practice. Dr. Shelton is instructed to assemble the collateral and make it available to representatives of the bank no later than 5 p.m., Monday, March 24, 1997. ....
As discussed, please send me a letter denying the bank's demand for possession and verifying the fact that Medalia Healthcare L.L.C. is in possession of said assets if Dr. Shelton is unwilling or unable to assemble and deliver possession of the collateral to the bank.
KCP at 61. The response of March 24, 1997, states that the assets of the practice are in Medalia's possession. On March 31, 1997, the Bank's letter to Medalia makes demand for the "fair market value of the assets" and states that the Bank will not accept possession of the assets. KCP at 65. Medalia's response, on April 10, 1997, states:
Medalia ... previously offered to pay [the Bank] $10,000 to release the bank's security interest in the assets used in Dr. Shelton's medical practice, which was rejected by the bank. Medalia also remains ready, willing, and able to turn over the assets to the bank at a mutually convenient time. We understand, however, that the bank does not actually want the assets and continues to demand [a monetary sum] from *1044 Medalia. Medalia is unwilling to pay this sum.
KCP at 70.

C. Proceedings in King County Superior Court

On April 18, 1997, the Bank brought a conversion action against Medalia in King County and sought a money judgment in the amount of $138,320.88 plus costs and attorneys fees. The requested amount derives from Shelton's loan balance: $136,049 in principal and $2,271.88 in interest. In the complaint, the Bank stated that "[u]pon information and belief, the fair market value of the collateral exceeds the amount owing on the loan by Thomas Shelton." KCP at 6.
On May 29, 1997, Medalia moved for summary judgment. On July 17, 1997, the Bank moved for a voluntary dismissal of its King County action pursuant to CR 41(a)(1)(B). The motion was granted.
On July 31, 1997, Medalia moved for attorney fees and costs in the King County action pursuant to RCW 4.84.330, or alternatively, under RCW 4.84.185. On August 19, 1997, the King County Superior Court entered an order denying an award of attorney fees.

D. Proceedings in Pierce County Superior Court

On July 18, 1997, the day after taking the voluntary dismissal in King County, the Bank filed a conversion action against Medalia in Pierce County requesting a judgment in the amount of the highest market value of the collateral as of the date of the conversion, not to exceed the balance of the loan to Shelton. The Pierce County Superior Court denied Medalia's motion to dismiss for lack of subject matter jurisdiction. The court initially denied cross-motions for summary judgment. Division II of this court denied Medalia's motion for discretionary review of the jurisdictional issue. Both parties moved for reconsideration of the denials of the summary judgment motions on liability, both asserting that there was no genuine issue of material fact. The Pierce County Superior Court granted the Bank's motion for partial summary judgment on liability, reserving the assessment of damages for trial. To expedite appeal of the liability ruling, Medalia stipulated to damages equal to the amount it paid Shelton to purchase the collateral.

STANDARD OF REVIEW
"When reviewing an order for summary judgment, we engage in the same inquiry as the trial court, and will affirm summary judgment if there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law." Wilson Court Ltd. Partnership v. Tony Maroni's, Inc., 134 Wash.2d 692, 698, 952 P.2d 590 (1998); see also CR 56(c). All facts and reasonable inferences must be considered in a light most favorable to the nonmoving party, and all questions of law are reviewed de novo. See id. We will sustain the trial court's judgment on any theory established in the pleadings and supported by proof. See id.

ANALYSIS
Pierce County Superior Court Had Subject Matter Jurisdiction Because a Conversion Action Where the Plaintiff Seeks Exclusively Monetary Recovery Is In Personam and Transitory in Nature and Therefore Is Not Subject to the Requirement of RCW 4.12.010(2) that Local Actions Be Commenced in the County Where the Personal Property Is Located
Medalia argues that under RCW 4.12.010(2) the Pierce County Superior Court lacks subject matter jurisdiction over the Bank's conversion action to recover the value of personal property located in King County. RCW 4.12.010 provides:
Actions for the following causes shall be commenced in the county in which the subject of the action, or some part thereof, is situated:
....
(2) All questions involving the rights to the possession or title to any specific article of personal property, in which last mentioned class of cases, damages may also be awarded for the detention and for injury to such personal property. *1045 RCW 4.12.010 is jurisdictional in nature. See Snyder v. Ingram, 48 Wash.2d 637, 638, 296 P.2d 305 (1956).
To address Medalia's jurisdictional challenge, we must determine whether a conversion action for the value of personal property is a question involving the rights to the possession or title of personal property so as to require, under RCW 4.12.010(2), that the action be brought in the county where the property is located. We look first to the nature of a conversion action.
A. The Bank Is Entitled to Seek Only Monetary Recovery in Its Conversion Action
Conversion is a tort. See Judkins v. Sadler-Mac Neil, 61 Wash.2d 1, 3, 376 P.2d 837 (1962). Conversion is "`the act of wilfully interfering with any chattel, without lawful justification, whereby any person entitled thereto is deprived of the possession of it.'" Id. (quoting SALMOND ON THE LAW OF TORTS sec. 78, p. 310 (9th ed.1936)); see also Meyers Way Dev. Ltd. Partnership v. University Sav. Bank, 80 Wash.App. 655, 674-75, 910 P.2d 1308 (1996). "[T]he measure of damages in conversion is the value of the article converted at the time of the taking." Junkin v. Anderson, 12 Wash.2d 58, 63, 120 P.2d 548 (1941). The plaintiff in a conversion action is under no obligation to take back the converted property rather than seek monetary recovery. See City Loan Co. v. State Credit Ass'n, 5 Wash.App. 560, 563, 490 P.2d 118 (1971); see also W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS sec. 15, at 106 (5th ed.1984).
Medalia argues that the essence of a conversion action is a determination of the right to possession of or title to personal property and that such actions must therefore be brought in the county where the property is located. Medalia points us to the Washington Supreme Court's analysis of RCW 4.12.010(2) in Snyder. In that case, the plaintiffs brought an action in King County for the recovery and possession of a Buick automobile or, in the alternative, for the value of the automobile. See id. at 637-38, 296 P.2d 305. The Buick was located in Chelan County when the action was commenced. See id. at 638, 296 P.2d 305. After determining that RCW 4.12.010(2) is jurisdictional in nature, the court found that the King County Superior Court lacked jurisdiction to determine the issues in the case because the subject of the action, the Buick, was not located in King County. See id. at 639-40, 296 P.2d 305.
But in the present case, the Bank does not seek a determination of the right to possession of or title to the property. The Bank seeks only monetary recovery. Thus, the Bank argues that this purely monetary claim does not fall under RCW 4.12.010(2). The Bank relies on the law's distinction between transitory and local actions.
B. A Conversion Action for Monetary Recovery Is Transitory
Although our statutes do not employ the terms "local" and "transitory", the actions described in RCW 4.12.010, which must be brought in the county where the property is located, are "local", while "transitory" actions are those described in RCW 4.12.025, which may be brought where the defendant resides. See State ex rel. U.S. Trust Co. v. Phillips, 12 Wash.2d 308, 315, 121 P.2d 360 (1942). Generally, actions for monetary recovery are in personam and are transitory in nature. See Shelton v. Farkas, 30 Wash.App. 549, 553, 635 P.2d 1109 (1981) (see also note 6: "[t]he term `transitory action' encompasses those actions which at common law might be tried wherever personal service can be obtained as opposed to in rem proceedings which are local in nature").
The Washington Supreme Court found that an action for the conversion of timber seeking the value of the trees was transitory and could be brought in a county other than the one in which the land where the trees were harvested was located.[2]See McLeod v. Ellis, 2 Wash. 117, 122, 26 P. 76 (1891) (finding that the complaint sufficiently pleaded a claim for conversion as opposed to a claim for injury to real property). Other *1046 jurisdictions have also characterized the tort of conversion as transitory where the plaintiff seeks damages. See Stone v. United States, 167 U.S. 178, 182, 17 S.Ct. 778, 42 L.Ed. 127 (1897) (a conversion action by the United States to recover the value of timber taken from public lands was transitory in nature); Mueller v. Brunn, 105 Wis.2d 171, 313 N.W.2d 790, 793-799 (1982) (providing an in-depth discussion of the distinction between transitory and local actions, especially in damages actions concerning real property, and noting that an action for conversion of personal property is transitory); Peiser v. Mettler, 50 Cal.2d 594, 328 P.2d 953, 958 (1958) (a conversion action is transitory where the main relief sought is personal and the title to, or possession of, real property is incidental); Kramer v. McDonald's Sys., Inc., 61 Ill.App.3d 947, 19 Ill.Dec. 21, 378 N.E.2d 522, 533 (1978) ("[c]onversion is a transitory cause of action sounding in tort and may be brought in one state for a conversion of personal property located in another state"), aff'd, 77 Ill.2d 323, 33 Ill.Dec. 115, 396 N.E.2d 504 (1979); First Nat'l Bank v. Kilgore First Nat'l Bank, 626 S.W.2d 546, 547 (Tex.App.1981) (an action for money damages for conversion of personal property is transitory); British-American Ins. Co. v. Cladakis, 321 So.2d 448, 449 (Fla.App.1975) (conversion is a transitory action).
Moreover, although deciding a change of venue question, the Washington Supreme Court impliedly found that a transitory action for the injury to personal property need not be restricted to the county where the property was located. See Andrews v. Cusin, 65 Wash.2d 205, 209, 396 P.2d 155 (1964). Andrews involved an action arising out of damages to a leasehold interest, which is personal property, and the court found that "the action, being one for breach of contract and/or negligent injury to personal property, is transitory" and could be brought in the county of the defendant's residence under RCW 4.12.025. Id.
Finally, our present question may be analogized to the issue addressed by the Washington Supreme Court in Silver Surprize, Inc. v. Sunshine Mining Co., 74 Wash.2d 519, 445 P.2d 334 (1968). In that case the plaintiff brought a breach of contract claim concerning an exchange of conveyances and mining of property located in Idaho. See id. at 520, 445 P.2d 334. The defendant asserted an affirmative defense of adverse possession. See id. at 521-22, 445 P.2d 334. The trial court dismissed for lack of subject matter jurisdiction because it viewed the subject of the action to be the determination of the title to the property in Idaho.[3]See id. at 522, 445 P.2d 334. The Washington Supreme Court reversed. See id. at 527, 445 P.2d 334. Noting that the contract action was transitory, the court recognized that "[t]he view is generally maintained that where the relief sought acts upon the party personally and does not require the court to deal directly with `the real estate itself, the proceeding need not be maintained in the state or county where the property is situate." Id. at 525, 445 P.2d 334. The court held that "where the basis of the action is transitory and one over which the court has jurisdiction, the court may hear and determine the action even though a question of title to foreign land may be involved, and even though the question of title may constitute the essential point on which the case depends." Id. at 526, 445 P.2d 334.
Although the case here involves personal property rather than real property, it is analogous to the issue in Silver Surprize: although determination of the conversion action entails determining whether the Bank has an interest in the property, the action is transitory and the monetary relief sought acts on the defendant personally. Thus, the analysis by the Silver Surprize court lends support to the view that transitory actions for monetary recovery are not subject to the requirements of RCW 4.12.010 for local actions.
Medalia's argument that RCW 4.12.010(2), applying to actions "involving" rights to personal property, is broader than RCW *1047 4.12.010(1), applying to actions "affecting" title of real property is unavailing. This exegesis is not persuasive where our analysis is based on the principle that transitory actions are in personam and may be brought where the defendant resides.
Thus, we hold that a conversion action where the plaintiff seeks exclusively monetary recovery is in personam and transitory in nature and is therefore not subject to the requirement of RCW 4.12.010(2) that local actions be commenced in the county where the personal property is located. Not only is this holding supported by Washington cases, it is also in keeping with the general trend to limit the applicability of the local action rules. See Andrews, 65 Wash.2d at 207, 396 P.2d 155 ("rules or statutes which require that actions for injuries to land be brought at the situs of the land have been severely criticized, as having no sound basis in reason"); Mueller, 313 N.W.2d at 796-97 (stating that "courts wherever possible have consistently construed actions concerning real estate to be transitory rather than local" and that the trend is toward making all money damage actions transitory). This holding applies only to conversion actions seeking exclusively monetary recovery, and our analysis does not address whether a conversion action seeking recovery of the property must be brought in the county where the property is located. In light of this holding, we affirm the trial court's ruling that it had jurisdiction over the Bank's conversion action.
A majority of the panel having determined that the remainder of this opinion lacks precedential value and will not be printed in the Washington Appellate Reports but will be filed for public record in accord with RCW 2.06.040, it is so ordered.
AGID, A.C.J., and COX, J., concur.
NOTES
[1] A copy was apparently sent to Medalia's counsel.
[2] The timber had been converted to cash, and thus the plaintiff had no option but to seek the value of the property rather than the recovery of it.
[3] RCW 4.12.010(1) provides that an action "[f]or the recovery of, for the possession of, for the partition of, for the foreclosure of a mortgage on, or for the determination of all questions affecting the title, or for any injuries to real property" must be brought in the county in which the subject of the action is situated.