[No. 3929-3-III. Division Three. November 5, 1981.]

JAMES SHELTON, *Appellant,* v. BARBARA FARKAS, ET AL, *Respondents.*

---

*James Shelton,* pro se.

*Kenneth D. Beckley* and *Schuller, Frederick & Beckley,* for respondents.

McINTURFF, C.J.—James Shelton appeals from a judgment disallowing his recovery of money allegedly owed in the sale of a violin.

Mr. Shelton is an experienced musician who operates the *University Village Music Center* in Seattle. On Saturday, April 14, 1979, Barbara Owen (formerly Barbara Farkas) and her 22–year–old daughter, Penny, drove from their res-

idence in Ellensburg to Mr. Shelton's store to look at violins. Penny had been studying violin in college for approximately 9 months. They advised Mr. Shelton of the price range in which they were interested, and Penny said she informed Mr. Shelton she was relying upon his expertise. He selected a violin for $368.90, including case and state sales tax. Mr. Shelton claims the instrument was originally priced at $465 but he discounted it because Mrs. Owen was willing to take it on an "as is" basis.[1] She and Penny alleged Mr. Shelton represented that the violin was "the best" and a "perfect violin for you" and generally represented it as being of high quality. Mrs. Owen gave a check and received the instrument.

The following Monday, April 16, 1979, Penny took the violin to her college music teacher who immediately told her the instrument had poor tone, a crack in the body, and that it was not the right instrument for her. Later that same day when Mrs. Owen was informed of the inspection, she telephoned Mr. Shelton, indicated her dissatisfaction and requested a refund. Mr. Shelton offered to exchange the violin for another instrument (within the following 10 days) but refused to refund the purchase price. In response Mrs. Owen subsequently stopped payment on the check.

On May 24, 1979, Mr. Shelton, proceeding pro se, had Mrs. Owen personally served with a copy of his summons and complaint for trial in King County. Mrs. Owen, through her attorney, Kenneth Beckley, advised Mr. Shelton, on more than one occasion,[2] that should he wish to

---

[1] Mrs. Owen signed a receipt which indicated the violin was sold "as is".

[2] On May 8, 1979, Mr. Beckley wrote Mr. Shelton as follows:

"If you elect to commence such a dispute, of course, it must be commenced here in Kittitas County and I suggest you correspond directly with me before taking time to bring an action. May I please hear from you."

On May 14, 1979, Mr. Beckley again wrote Mr. Shelton stating:

"1. You have failed to use the prescribed form of summons and as recently adopted by the court rules of the State of Washington. The summons is defective.

"2. You intended to proceed in King County, Washington. Court rules and statutes of the State of Washington specifically provide that the venue or location

pursue his legal action it would be subject to change of venue. Nevertheless, Mr. Shelton commenced his action in King County and was granted a summary judgment on June 27, 1979. Mrs. Owen sent Mr. Shelton a motion and affidavit for order changing venue to Kittitas County on June 27, 1979, and moved to vacate the summary judgment.

Summary judgment was vacated in King County and terms of $150 were imposed upon Mr. Shelton since he had prior notice of improper venue. *See* RCW 4.12.090. The action was transferred to Kittitas County where he filed another motion for summary judgment. In response to the motion Mrs. Owen filed an affidavit indicating Mr. Shelton's failure to comply with the payment of terms which were a condition precedent to the bringing of an action in Kittitas.[3]

On October 10, 1979, Mr. Shelton wrote Mr. Beckley:

Please be advised you may pick up your $150.00 at 9:30 a.m. Tuesday or Wednesday the 25th or 26th October 1979, or at 9:30 p.m. 27 October 1979 at 4733 Village Pl.

---

of this type of lawsuit must be in the county where the defendant resides. She lives in Kittitas County, Washington.

"I'm confident with this specific information in mind you would not be foolish enough to waste $45 and file the complaint in King County and attempt to secure entry of an order of default against Mrs. Farkas. I guess if you want to persist with the lawsuit you may as well just redo it for Kittitas County, Washington, use the *proper form of summons* and have it served here a second time around. Please advise."

On May 16, 1979, Mr. Shelton wrote Mr. Beckley:

"Your legal suggestions are taken under advisement and you will hear from us within the next 10 days."

On May 29, Mr. Beckley again wrote Mr. Shelton:

"If you elect to file this action in King County, it will be necessary to file a motion for change of venue to Kittitas County all of which will result in additional cost not only for refiling the action but also a request for attorney's fees pertaining to filing and arguing the motion for change of venue. . . ."

[3]The order of July 24, 1979, stated in part:

"Pursuant to the provisions of RCW 4.12.090(1), Defendant be and she hereby is awarded judgment against Plaintiff JAMES SHELTON in the amount of $150.00. Said judgment shall be satisfied in full by payment to KENNETH D. BECKLEY . . . no later than the date on which the proceeding for Change of Venue has been completed by filing of the action in the Kittitas County Superior Court . . ."

Northeast Seattle, Washington.

Since this $150.00 award was due to the personal error of myself I will have to pay you personally at any of those times. . . . Failure to pick up payment will be deemed your intent to forfeiture.

On October 17, 1979, Mr. Beckley wrote Mr. Shelton:

I do not plan to drive to your store in Seattle to pick up whatever funds you wish to pay at whatever time you wish to pay them. What I suggest you do is please send me your check in the amount of $150 in the envelope enclosed.

Due to nonpayment, the motion for summary judgment in Kittitas was consequently denied. At the same hearing on November 26, 1979, a motion by Mrs. Owen for continuance was denied as well as Mr. Shelton's request for terms.[4] Trial was finally conducted on March 7, 1980, concluding in the judgment for Mrs. Owen and an award of attorney's fees to her under RCW 4.84.250.[5]

Initially, Mr. Shelton argues the trial court erred in granting a change of venue from King County to Kittitas County. We do not agree.

An action for the recovery of money owed is clearly in personam and therefore transitory.[6] See 77 Am. Jur. 2d Venue § 9 (1975). RCW 4.12.025 provides in part:

An action may be brought in any county in which the defendant resides, or, if there be more than one defend-

---

[4]The award of "terms" is within the discretion of the court. *Krutz v. Dodge,* 66 Wash. 178, 183, 119 P. 188 (1911).

[5]Former RCW 4.84.250 states:

"Notwithstanding any other provisions of chapter 4.84 RCW and RCW 12.20-.060, in any action for damages where the amount pleaded by the prevailing party as hereinafter defined, exclusive of costs, is one thousand dollars or less, there shall be taxed and allowed to the prevailing party as a part of the costs of the action a reasonable amount to be fixed by the court as attorneys' fees."

[6]The term "transitory action" encompasses those actions which at common law might be tried wherever personal service can be obtained as opposed to in rem proceedings which are local in nature. Actions on contracts are in their nature transitory. *See State ex rel. United States Trust Co. v. Phillips,* 12 Wn.2d 308, 121 P.2d 360 (1942); *see also* 2 L. Orland, Wash. Prac. § 42 (1972).

ant, where some one of the defendants resides at the time of the commencement of the action.

Mrs. Owen properly requested the action be transferred to Kittitas, the county of her residence. *Corning & Sons, Inc. v. McNamara*, 8 Wn. App. 441, 446, 506 P.2d 1328 (1973). The court did not err in granting Mrs. Owen's motion to change venue.

Additionally, Mr. Shelton contends the court erred in awarding Mrs. Owen terms for the changing of venue. RCW 4.12.090(1) provides in part:

> ██f the court finds that the plaintiff could have determined the county of proper venue with reasonable diligence, it shall order the plaintiff to pay the reasonable attorney's fee of the defendant for the changing of venue to the proper county.

We find ample support in the record for the court's award. Mr. Beckley on several occasions advised Mr. Shelton of the impropriety of filing the action in King County and that a motion would be filed to change venue to Kittitas County. Consequently, we find no error.

██ Mr. Shelton next maintains the use of an "as is" clause affects the buyer's right to reasonably inspect goods prior to acceptance, or to revoke after acceptance. We initially note the use of an "as is" expression is relevant to the exclusion or modification of warranties under RCW 62A.2–316(3)(a).[7] However, Mr. Shelton's action does not concern warranty, rather the threshold question is whether Mrs. Owen accepted the violin, and if it was accepted, whether she properly revoked her acceptance.[8]

---

[7]RCW 62A.2–316(3)(a) states: "unless the circumstances indicate otherwise, all *implied warranties* are excluded by expressions like 'as is', 'with all faults' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no *implied warranty*; . . ." (Italics ours.)

[8]As indicated by footnote 7, the term "as is" may only be used to negate *some* implied warranties. The implied warranty of fitness for a particular purpose under RCW 62A.2–316(4) must be particularly excluded by a merchant to be ineffective. The record indicates Mrs. Owen and Penny voiced their reliance upon Mr. Shel-

 "Acceptance" is generally regarded as a term of art distinguishable from other acts of the buyer. As stated in J. White & R. Summers, *Uniform Commercial Code* § 8.2, at 296 (2d ed. 1980):

> [W]hether the buyer has "accepted" the goods is unrelated to the question whether title has passed from seller to buyer. . . . [A]cceptance is only tangentially related to buyer's possession of the goods, and in the usual case the buyer will have had possession of the goods for some time before he has "accepted" them.

Under RCW 62A.2–606(1)(a)[9] acceptance occurs when the buyer, after a reasonable opportunity to inspect the goods, signifies to the seller that the goods are conforming or that he will retain them in spite of nonconformity. Here, Mr. Shelton's store policy was to not allow the violin to be removed from the store without purchase. Penny's violin instructor would not have been expected to make a special trip to the store for the purpose of inspecting the violin. Mrs. Owen purchased the violin on Saturday. The violin was taken to Penny's teacher the following Monday. Later that Monday, Mrs. Owen notified Mr. Shelton of the inspection and of her desire not to retain possession. This 2–day period is within a reasonable time to inspect under RCW 62A.2–606(1)(a). Consequently, we do not deem Mrs. Owen to have "accepted" the violin within the meaning of the code.

Assuming for the sake of argument, the violin was accepted pursuant to RCW 62A.2–606(1), we also find a justifiable revocation of acceptance pursuant to RCW

---

ton who indicated the instrument was a "perfect violin for you." Additionally, express warranties are not negated by the term "as is". RCW 62A.2–316(3)(a). The violin was also represented to be as good as one selling for $1,000 and the "best".

[9]RCW 62A.2–606(1)(a) states in part:

"(1) Acceptance of goods occurs when the buyer

"(a) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their non–conformity; . . ."

62A.2–608(1)(b) which provides:

> (1) The buyer may revoke his acceptance of a lot or commercial unit whose non–conformity substantially impairs its value *to him* if he has accepted it
>
> . . .
>
> (b) without discovery of such non–conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance *or by the seller's assurances.*

(Italics ours.)

The record indicates Mr. Shelton was an experienced musician and music store operator while Penny had only played the violin for approximately 9 months. Mrs. Owen stated in a letter dated April 21, 1979:

> [W]e relied upon your expertise and advice to guide us in the wise choice of a violin. We readily accepted your representation of the violin in question; we accepted its high quality, good condition and high market value on your say so. . . .

Additionally, Penny Farkas said Mr. Shelton compared the violin to one selling for $1,000. Mr. Shelton's representations at the time of sale are sufficient for Mrs. Owen to argue that her acceptance was reasonably induced by Mr. Shelton's assurances. Both Penny and Mrs. Owen testified that to the best of their knowledge the crack was not visible when the violin was purchased. Although the right of a buyer to revoke acceptance of goods depends upon objective tests[10] of substantial impairment, the testimony of Jeff Cox, called as an expert witness, stated that once a crack has opened it usually leads to more expense "and so gradually, it really isn't worth the money." We find substantial evidence from which the trial judge could have found

---

[10]*Hays Merchandise, Inc. v. Dewey,* 78 Wn.2d 343, 347, 474 P.2d 270 (1970) set forth an objective test under RCW 62A.2–608. However, other courts have embraced the "subjective" interpretation of the words "substantially impairs its value *to him.*" *See Barrington Homes of Fla., Inc. v. Kelley,* 320 So. 2d 841 (Fla. Dist. Ct. App. 1975); *Jorgensen v. Pressnall,* 274 Or. 285, 545 P.2d 1382 (1976).

objective impairment of the violin to Mrs. Owen.[11]

■ Mr. Shelton obliquely argues his entitlement to the cost of repair for the damaged instrument pursuant to RCW 62A.2–710; however, this argument was not presented to the trial judge. Relief which was not requested in the trial court cannot be requested for the first time on appeal. *Hammond v. Hammond,* 26 Wn. App. 129, 133, 611 P.2d 1352 (1980).

Lastly, Mrs. Owen cross–appeals for attorney's fees on this appeal. RCW 4.84.250 states:

> [I]n any action for damages where the amount pleaded by the prevailing party . . . is one thousand dollars or less, there shall be taxed and allowed to the prevailing party . . . a reasonable amount to be fixed by the court as attorneys' fees.

The Superior Court specifically found that Mrs. Owen was "the prevailing party" and awarded her an allowance for attorney's fees pursuant to RCW 4.84.250.[12] Moreover, attorney's fees are allowable under RCW 4.84.290, which states in pertinent part:

> [I]f the prevailing party on appeal would be entitled to attorneys' fees under the provisions of RCW 4.84.250, the court deciding the appeal shall allow to the prevailing party such additional amount as the court shall adjudge reasonable as attorneys' fees *for the appeal.*

(Italics ours.) We conclude Mrs. Owen is entitled to reasonable attorney's fees on appeal. *See Harold Meyer Drug v. Hurd,* 23 Wn. App. 683, 686, 598 P.2d 404 (1979).

---

[11]In his brief before this court, Mr. Shelton analogizes between the purchase of a used violin and a used automobile. In *Testo v. Russ Dunmire Oldsmobile, Inc.,* 16 Wn. App. 39, 554 P.2d 349, 83 A.L.R.3d 680 (1976), this court noted that acceptance of a used automobile may be revoked when defects, generally undiscoverable on purchase, are found which substantially affect its value to the buyer. *Id.* at 48.

[12]Additionally, former RCW 4.84.270 states:

"The defendant, or party resisting relief, shall be deemed the prevailing party within the meaning of RCW 4.84.250, if the plaintiff, or party seeking relief, recovers nothing, or if the recovery, exclusive of costs, is the same as or less than the amount offered in settlement by the defendant . . ."

The judgment of the Superior Court is affirmed; the cause is remanded for determination of reasonable attorney's fees on appeal.

MUNSON and ROE, JJ., concur.

Reconsideration denied November 24, 1981.

Review denied by Supreme Court January 8, 1982.