Robert L. NORWOOD, Petitioner,

v.

LEE WAY MOTOR FREIGHT, INC., Own Risk, Respondent.

No. 56159.

Court of Appeals of Oklahoma, Division No. 2.

Jan. 26, 1982.

Rehearing Denied April 23, 1982.

Certiorari Denied June 8, 1982.

Released for Publication by Order of Court of Appeals June 11, 1982.

Jim Grennan, Grennan, Faulkner & Koenig, Oklahoma City, for petitioner.

John S. Oldfield, Jr., Oklahoma City, for respondent.

BOYDSTON, Presiding Judge.

Insuror appeals from a 29 percent permanent partial disability award on the grounds it is excessive and conflicts with AMA Guidelines. We affirm.

## I

Jurisdictional facts are undisputed. This appeal involves only the interpretation of the medical evidence which consists of the deposition and reports by Dr. A. for Claimant, Dr. F. for Insuror and the report of court-appointed Dr. P. Claimant's injury is to his shoulder and cervical spine.

Dr. F. rated Claimant's permanent partial disability at zero. Dr. A. rated the injuries at 35 percent to the body in the following manner:

8% . . . to the whole person by reason of injury to his cervical spine . . . 13% . . . to the whole person by reason of the injury to his right shoulder. . . .

He then added 14 percent (seven percent to shoulder joint and seven percent to cervical spine) by reason of traumatic aggravation of a pre-existing arthritic condition.

The latter 14 percent element of disability is explained in Dr. A.'s deposition as attributable to trauma-induced permanent elevation and acceleration of a pre-existing arthritic process. The resulting generalized pain creates disability apart from "motion" impairment and central nervous system "pain." As such, the constituent 14 percent rating is a deviation from the AMA Guides

to the Evaluation of Permanent Impairment (Guides).

The court found more than a 30 percent disparity between medical opinions and appointed Dr. P. to examine Claimant.

Dr. P. rated the disability at 14 percent to the upper extremity [arm] which equals eight percent to the whole person [body] and 14 percent to the whole person because of the cervical spine injury. He then combined them [8% + 14%] using the AMA "combined injury" tables found in the Guides for a total impairment rating of 21 percent.

Trial judge found Claimant:

[S]ustained 14 percent permanent partial disability to the NECK, 15 percent permanent partial disability to the RIGHT SHOULDER combined to 29 percent permanent partial disability to the BODY AS A WHOLE. . . .

Insuror's appeal raises two issues, both relating to the proper use of the AMA Guides.

First, did the court properly follow the AMA Guides in interpreting Dr. A.'s report? Insuror argues Dr. A. improperly added the values (8% + 13% + 7% + 7% = 35%) when he should have *combined* them using the AMA tables and his report is therefore incompetent. Had he combined, his total would have been considerably less than 35 percent. Insuror also argues the court merely added its findings (14% + 15% = 29%) which is equally improper.

Second, do the Guides permit disability rating deviations based on osteoarthritic aggravation such as that described by Dr. A.? Such a deviation appears to overlap both the "central nervous system" pain rating section of the Guides and the "loss of motion" standards used to determine impairment. If this is so, Claimant's injury may unfairly include a percentage for pain-derived disability twice—once for the loss in range of motion (pain in many cases causes the lost range) and again as a general but enduring pain which decreases work efficiency thereby contributing to a general disability.

## II

The problem relative to rating the shoulder injury appears to be more complex than it is in reality. It is simply the result of different methods being used by doctors in reporting their estimation of disability. Dr. P. evaluated it in detail by dividing the impairment ratings into constituent parts; that is, the loss attributed to diminished motion and the loss attributed to pain. Then, using the AMA tables, he combined the parts (11% + 5% = 14%), then converted this limb evaluation into terms of equivalent disability to the "whole person" (14 percent to the upper extremity equals 8 percent to the body). His report explains the usual process of evaluation:

> I will first rate the shoulder impairment to the right upper extremity then convert the findings to the whole person and combine this with the cervical spine impairment. . . . By reason of impairment to the right shoulder he has 11% for loss of motion and 5% for pain and sensory disturbance . . . . 14% to the upper extremity is equivalent to 8% to the whole person. If we combine the 8% from the shoulder impairment with the 14% for the cervical spine impairment we then have 21% impairment to the whole person.

Contrast this with Claimant's medical report by Dr. A. which went straight to a rating "to the whole person," bypassing the elemental limb rating:

> [H]e has sustained . . . 13% permanent partial impairment to the whole person by reason of the injury to his right shoulder, as indicated by the AMA Guides.

Insuror argues Dr. A.'s report, using the AMA Guides tables, should be interpreted as follows: the 13 percent impairment should be combined with the seven percent arthritic pain-related impairment (13% + 7% = 19%); the cervical injury should be combined in the same manner (8% + 7% = 14%); then, these two values should be combined to finally arrive at the proper total combined disability of no more than 30 percent, rather than the 35 percent total impairment reported by Dr. A.

Insuror also argues the judge found specifically that Claimant was injured 14 percent to the neck and 15 percent to the right shoulder combined to 29 percent to the body as a whole and these should be combined in like manner in accordance with the AMA Guides. We note the tables reveal a combined disability rating of 27 percent rather than 29 percent as adjudicated. The judge obviously added the two figures rather than combining them using the tables.

These labrynthian calculations and attendant arguments ably demonstrate the need for further clarification of the recently adopted workers compensation rules relative to the AMA Guides. Within the limitations of logic and experience, we shall attempt to so clarify.

## III

First we note that a shoulder injury is considered an injury to the "whole person." *Lee Way Motor Freight, Inc. v. Highfill*, Okl., 429 P.2d 745 (1967); *Tidal Oil Co. v. Bolton*, 153 Okl. 20, 4 P.2d 736 (1931); and, 85 O.S.1978 Supp. § 22. The cervical injury falls in the same category. Being separate anatomically the doctors must evaluate them separately. The Guides apparently require that constituent elements be combined (in this case limitation of motion disability with disability caused by pain); then, each separately rated injury be combined with all other disabilities found in other parts of the body until a composite "whole body" rating is achieved.

In this case, two separate parts of the "whole body" were adjudicated independently—15 percent to the shoulder and 14 percent to the cervical spine. Prior to adoption of the AMA Guides, Claimant's two injuries would have been added together to arrive at his total disability rating. However, for reasons which we cannot logically fathom, the two injuries, when combined according to the Guides, are worth less to Claimant than the same two injuries would have been if incurred in separate accidents, which we find to be an illogical result.

We can imagine multiple injuries which, in combination, may create *more* disability to a claimant than the sum of the constituent disabilities. However, we cannot imagine injuries in combination with each other which *decrease* a claimant's overall disability.

The preface to the Guides explains only cryptically the scientific basis for these combinations. It states:

> The method generally used to combine various impairments is based on the principle that each impairment acts not on the whole part but on the portion which remains after the preceding impairment has acted.[1]

In this case, Dr. P. found the arm is impaired 11 percent by reason of loss of motion and five percent because of pain and sensory disturbance. Had this not been a shoulder injury (which has been construed to be injury to the "whole body") his total recovery, after combining the injuries, would have been 14 percent. This translates into an award of 14 percent to the upper extremity (arm) or 14 percent times 250 weeks which equals 35 weeks—a loss to the Claimant of five weeks benefit where the rating is solely to the arm.

In all candor, because the injury was to the shoulder, the Guides translate 14 percent to the arm into its equivalent of eight percent to the body as a whole which rectifies the problem through the magic of math and tables. The resulting disability rating then becomes eight percent times 500 which equals 40 weeks—the same award he would have received had the injury not been "combined" (11% + 5% = 16% × 250 = 40 weeks). The point is, had the injury been solely to the arm, the combination tables would have diminished Claimant's award considerably.

We find the objective standards of measuring functional impairment to be a major step toward achieving uniformity and fairness in rating workers' disabilities. However, if the system is indeed valid and objective the constituent rating of a single disability should not be diminished by the finding of a separately identifiable disability. At a minimum the separate ratings should be additive within the same body unit under examination. That is, separately derived ratings to the same part of the body should be *added*, not combined using the tables.

■ Beyond the addition of ratings, if there is any tinkering or fine tuning to be done when considering a combination of disabilities, it should be to determine if the combination results in an overlaying increased disability caused by the peculiarities of the multiple injuries in relation to inherent systemic or structural symbiosis. Such a review should be the final medical determination made by the examining doctor. In no case should the final disability rating be less than the sum of its parts, as suggested by Insuror.

■ In this case, the trial judge found Claimant has two separately ratable injuries to the whole body. Dr. A. testified Claimant's shoulder is rated at 20 percent (13 percent motion impairment plus seven percent general pain due to aggravated arthritis); he rated his cervical injury at 15 percent (eight percent motion impairment plus seven percent pain), a total of 35 percent to the whole body. Dr. P. found Claimant to be 21 percent disabled to the whole body. We have no way of knowing, but it appears that the court accepted Claimant's doctor's impairment rating (13% + 15% = 28%) and added one percent for the arthritic condition. The judge found Claimant to be 29 percent permanently partially disabled, which we hold is well within the range of the competent testimony.

1. Example: Two 10 percent injuries to the body arising from the same accident compute as follows:

First injury: 10 percent × 500 weeks = 50 weeks. Having already lost 10 percent because of the first injury, there remains only 90 percent of a whole body for the second injury to effect, that is, 500 less 10 percent = 450 weeks × 10 percent = 45 weeks. Therefore the total recovery is 45 plus 50 weeks or 95 total weeks, a clear loss to the worker by reason of having *more* injury to separate parts of the same body unit.

This leads us to the second ground for appeal.

## IV

Insuror's principle argument, which underpins his first proposition, is that the arthritic-related pain disability constitutes a double allowance for pain. If the 14 percent allowance for pain is subtracted, the court is left with only the 21 percent report of Dr. P. and Claimant's report is stripped to 21 percent. In this respect we observe that whether a doctor has included "pain" twice to arrive at an erroneous rating is a matter subject to cross-examination and proof.

It is true that an orthopedic impairment rating is based almost completely on loss of range and motion. It is also true that in many cases range and motion limitations are bounded by pain. However, that is not always the case. Limitations, in many cases, are created simply by boney and ligamentous abnormality caused by stretching, fracturing, tearing and grinding. There may be constant and general pain, with or without exertion, and totally without regard to extension or flexion tests.

In this case, Dr. A. testified Claimant's arthritic-related pain is general and resulted from the injury. It is an aggravation of a pre-existing condition which he characterized as a normal consequence of severe trauma to normally arthritic boney structures. Dr. P. also included residual pain as an element of disability. The fact he did not find this condition to be as extensive as did Dr. A. does nothing more than create a conflict in evidence. We are constrained in these matters to determine whether there is competent evidence to support the judgment. *Lee Way Motor Freight, Inc. v. Highfill, supra.*

The AMA Guides were adopted with the permission of the legislature, however they were intended to be—as the title implies—guides. The court is specifically authorized to deviate from them where scientifically sound reasons are proven. 85 O.S.1977 Supp. § 3(11). After having reviewed the Guides, we concur with the wisdom of the legislature which declared such deviations are permissible. We also find this proviso should be liberally construed in favor of injured workers if we are to effect the overall legislative purpose of the workers' compensation act.

 We hold disability ratings based on evidence of traumatic, permanent aggravation to pre-existing arthritic conditions to be permissible where based on competent medical evidence. In this case we find the deviation is substantiated by the record.

Judgment affirmed.

BACON and BRIGHTMIRE, JJ., concur.