1998 OK CIV APP 69

**June MURRAY, Appellant,**

v.

**D & J MOTOR COMPANY, INC., an Oklahoma corporation; Dixie A. Harris, d/b/a D & J Motor Company, Inc.; and Albright Title & Trust Company, as Issuer of Bond No. MD10665, Appellees.**

No. 89136.

Court of Civil Appeals of Oklahoma, Division No. 4.

May 12, 1998.

---

Tomme J. Fent, Community Legal Services of Oklahoma City, P.C., Oklahoma City, For Appellant.

Jeffrey D. Black, Oklahoma City, Jack De McCarty Ross, McCarty, Rigdon & Ross Newkirk, Oklahoma, For Appellees.

## OPINION

RAPP, Judge.

The trial court plaintiff, June Murray ("Murray"), appeals from an order that sustained the trial court defendants' ("D & J")[1] demurrer to the evidence in a jury trial.

### I. STANDARD OF REVIEW

■ The appeal of the sustentation of a demurrer will result in examination of the record in a light most favorable to the plaintiff. Conflicts and contrary inferences will be disregarded. A demurrer to the evidence admits the facts presented in support of the claim. Therefore, if there are facts relevant to a question in issue, the case must go to the jury. *Jackson v. Jones,* 1995 OK 131, 907 P.2d 1067; *Kelley v. Barrett,* 1995 OK 55, 897 P.2d 289.

The evidence here consists of Murray's testimony and the vehicle purchase transaction documents. Notwithstanding the review standard, Murray must have a legally sustainable basis for her action. Murray, in summary, asserts Oklahoma does not permit a seller to misrepresent and falsify and then avoid responsibility by disclaiming all warranties. She sought recovery on three theories: (1) revocation under the Uniform Commercial Code, 12A O.S.1991, § 2–608 ("UCC"); (2) fraud; and (3) violation of the Oklahoma Consumer Protection Act, 15 O.S. 1991, § 751 et seq.

■ Therefore, this court will examine the evidence adduced at trial in light of the elements of each theory of recovery. A plaintiff must present some evidence in support of each element of each theory to withstand the challenge of a demurrer and, to the extent of the plaintiff's failure to do so, a demurrer to the evidence will be sustained. See, for example, *P.E.A.C.E. Corp. v. Oklahoma Natural Gas Co.,* 1977 OK 151, 568 P.2d 1273 (holding evidence required for each element of fraud).

### II. BACKGROUND

Murray purchased a used, van-type vehicle from D & J. She paid $3,995.00 partly in cash and partly with a trade-in vehicle. Within one day after the purchase she noticed a problem with the heater. The vehicle was taken to a mechanic who estimated a heater-core repair would cost $300.00. On the way home, the vehicle completely broke down. The vehicle was then examined by two mechanics. Rods were found to be knocking, the head gasket was blown, and the engine on the verge of total failure. Repairs were estimated to cost between $1,700.00 and

---

1. Dixie Harris was named as a principal officer in this lawsuit because the corporation had not paid its franchise tax. Albright Title & Trust Company provided the used car dealer's bond. An unanswered issue exists of whether the corporation is entitled to defend this case. 68 O.S. 1991, § 1212(c).

$2,000.00. The vehicle was not repaired and has not been driven. Murray asked D & J Motor to repair the vehicle or refund her money. D & J refused to do either.

During negotiations for the purchase of the car, Murray told the D & J salesman "Charlie" of the need for a reliable van-type vehicle so that she could transport her ailing and disabled daughter. Her daughter was present during these discussions.

Murray and Charlie took the vehicle for a test drive. Murray noticed a rattling noise during the test drive. She questioned him about the noise. He represented to her that the engine had been replaced and "there was nothing wrong with it." He told her that the vehicle would provide reliable transportation.

Murray testified Charlie also represented that the vehicle had been inspected by a mechanic and "there's nothing wrong with it." She further testified that she relied upon the salesman's representation in her decision to purchase the vehicle.

The sales documents were prepared by the principle of D & J, the defendant, Dixie A. Harris. He also represented that the vehicle had been inspected by a mechanic, that there was nothing wrong with it, and that it ran well. Murray did not have the vehicle inspected prior to her purchase.

The sales documents in the transaction included a Buyer's Guide and a dealer Warranty Disclaimer. Murray signed these documents. These documents, in toto, advised Murray the vehicle was being sold "as is" and "with all faults" and that express and implied warranties were disclaimed. Murray testified that she understood that the vehicle did not have a warranty.

The Trial Court, in sustaining the defendant's demurrer, stated that: Murray knew and understood what "no warranty" meant; she had the right to have the vehicle inspected even after asking about the engine; and she bought the vehicle anyway knowing there was no warranty, and with the "as is" document. Murray appeals.

## III. ANALYSIS UNDER U.C.C.

### (a) Revocation

The record, examined under the stated standard of review, will determine if Murray presented sufficient evidence to enable her to invoke the revocation remedy.

Under the record presented, it cannot be disputed that D & J sold a defective vehicle to Murray.

■ Revocation by a buyer under 12A O.S.1991, § 2–608 is not the same as a remedy for breach of express or implied warranty. *Seekings v. Jimmy GMC of Tucson, Inc.*, 130 Ariz. 596, 638 P.2d 210 (1981); *Shelton v. Farkas*, 30 Wash.App. 549, 635 P.2d 1109 (1981). The parties agree that Section 2–608 permits a buyer to revoke acceptance of goods under certain circumstances and procedures. In context, they agree that the required elements to establish Murray's first claim are:

1. The vehicle failed to conform to the contract;

2. Nonconformity must substantially impair the value to Murray;

3. Murray did not discover the nonconformity and her acceptance was reasonably induced either by the difficulty of discovery before acceptance or by D & J's assurances;

4. Murray revoked acceptance within a reasonable time after discovery and before any substantial change in the vehicle's condition not caused by its own defects; and

5. Murray notified D & J that she was revoking acceptance.

On appeal, D & J argues only that Murray fails to establish any evidence of the first element.[2] D & J bases its position on the

---

2. Therefore, for purposes of appeal and application of the standard for review, D & J is here deemed to concede that evidence exists in support of other elements, three, four, and five. *See Wetsel v. Independent School Dist. I–1*, 1983 OK 85, ¶ 12, 670 P.2d 986, 992. D & J in its brief admits that: "Revocation of acceptance is possible only where non-conformity substantially impairs the value of any goods to the buyer," and argues concerning value that Murray was aware of the condition and its relative value, but does not touch upon or explain the distinction between the purchase price and the unquestioned engine repair at approximately one half the sale

acceptance of the vehicle in an "as is" and with "all faults" condition coupled with Murray having heard the noise in the engine during the test drive while wholly disregarding the statements of Charlie and the principle, and also that she was aware of its "relative value thereof." In other words, D & J argues that the right to revoke is tied to the existence of warranties and if none exist Murray does not have a right to revoke. Apparently, the trial court concurred with D & J because, when explaining the ruling on the demurrer to the jury, the court spoke of the absence of warranty and Murray's acknowledgment that there was no warranty.

■ The right to revoke does not depend upon the existence or breach of any warranty. The buyer may revoke under 12A O.S.1991, § 2–608 even though all warranties are excluded. *Seekings v. Jimmy GMC of Tucson, Inc.*, 130 Ariz. 596, 638 P.2d 210 (1981). This Section does not limit the Buyer's revocation remedy to a case involving breach of warranty. The standard is more subjective. It permits revocation for *nonconformity of goods that substantially impair the value of the goods to the buyer. Advanced Computer Sales, Inc. v. Sizemore*, 186 Ga.App. 10, 366 S.E.2d 303 (1988); *Blankenship v. Northtown Ford, Inc.*, 95 Ill. App.3d 303, 50 Ill.Dec. 850, 420 N.E.2d 167, 170 (1981); *Shelton v. Farkas*, 30 Wash.App. 549, 635 P.2d 1109 (1981).

The absence or existence of any warranty is immaterial when considering revocation under Section 2–608.[3] Therefore, the question here is: Was plaintiff's attempted revocation valid where there is nonconformity and resulting substantial impairment of value

undiscovered because of reliance on sellers' assurances? The UCC defines the term conforming.

> (2) Goods or conduct including any part of a performance are 'conforming' or conform to the contract when they are in accordance with the obligations under the contract.

12A O.S.1991, § 2–106(2).

■ Every contract imposes an obligation of good faith. 12A O.S.1991, § 1–203. The term "good faith" means honesty in fact in the conduct or transaction concerned. 12A O.S.1991, § 1–201(19). In a phrase, the Buyer is entitled to get what she or he paid for.

■ The additional questions to be considered in arriving at the determination of conformity are: What did Murray buy, did she get it and may she revoke? The evidence, reviewed under the above standard, is that she traded in reliable transportation and paid money to obtain other reliable transportation suitable to transport her disabled and ill daughter. The replaced vehicle and expected reliable transportation cost $3,995.00. The item furnished was mechanically deficient and not reliable. Further, it did not conform to the sellers' representations. The undisputed repair cost was approximately one-half of the purchase price. The ultimate issue to be determined by the trier of fact is whether Murray received what she paid for, that is, a vehicle[4] conforming to the sellers' representations and assurances and also whether she had a right to revoke.

---

price, thereby substantially admitting the impairment of value question.

**3.** 12A O.S.1991, § 2–608 provides:
> (1) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it
> (a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured;
> or
> (b) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances. '

> (2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies seller of it.
> (3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

**4.** On this record D & J does not argue the element of impairment of value to buyer. See footnote 2.

## (b) Warranty

■ Even in cases of blanket disclaimers of all warranties there remains a warranty of description. A buyer and seller transact about some "thing" which then will be described as the essence of their transaction. The Uniform Commercial Code Comment under 12A O.S.1991, § 2–313 discusses disclaimers generally.[5] The Comment to this statute notes that the purpose of a warranty is to determine what, in essence, the Seller has agreed to sell.[6] The Comment goes on to say:

> Thus, a contract is normally a contract for something describable and described. A clause generally disclaiming 'all warranties, express or implied' cannot reduce the seller's obligation with respect to such description and *therefore cannot be given literal effect under Section 2–316.*
> This is not intended to mean that the parties, if they consciously desire, cannot make their own bargain as they wish. *But in determining what they have agreed upon in good faith is a factor and consideration should be given to the fact that the probability is small that a real price is intended to be exchanged for a pseudo-obligation.* (emphasis added).

As a minimum, D & J's use of "as is" and "with all faults" does not modify or remove the warranty of description provided in their oral assurances concerning the vehicle. Those terms "as is" and "with all faults" not described or made known to Murray do not serve to create a pseudo-obligation.

■ The breach, if any, of the warranty of description may serve as the basis for a finding of nonconformity that substantially impairs the value to buyer. Here, the facts, when tested under the foregoing standard, support Murray's assertion that the vehicle did not meet the warranty of description when weighed under the demurrer standard. She was entitled to have the jury determine whether this failure presented sufficient justification for revocation due to delivery to her of a nonconforming vehicle.

## (c) Implied Warranty Circumstances

Murray did not sue for damages for breach of warranty. However, D & J, ignoring this, still argues that Murray's purchase of the vehicle with the "as is" and "with all faults" disclaimer placed her on notice of the vehicle's condition and thereby made the vehicle conforming. This then would, under the defendants' argument, exclude implied warranties of fitness and merchantability. If these implied warranties were not effectively excluded then evidence exists that supports a breach of implied warranties so as to justify submission of nonconformity to the jury.

■ A warranty may be express or implied. 12A O.S.1991, §§ 2–313, 2–314. Either type of warranty may be modified or excluded. 12A O.S.1991, § 2–316.

■ An express warranty relates to the conformity of the item and considers its quality, characteristics and condition. *Scheirman v. Coulter*, 1980 OK 156, ¶ 4, 624 P.2d 70, 72.

Section 2–316(3) addresses the use of the terms "as is" and "with all faults":

> (3) Notwithstanding subsection (2) with regard to implied warranties
> (a) *unless the circumstances indicate otherwise*, all implied warranties are excluded by expressions like 'as is', 'with all faults',

---

5. 12A O.S.1991, § 2–313 provides in part:
   (1) Express warranties by the seller are created as follows:
     (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
     (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
     . . . .

  (2) It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

6. UCC Comments are not part of Statute but are used and useful interpretive tools. *Wilkerson Motor Co., Inc. v. Johnson*, 1978 OK 12, 580 P.2d 505.

or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain there is no implied warranty; and

(b) when the buyer before entering into the contract has examined the goods or the sample or the model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him. (emphasis added).

The defendants assert that all warranties were disclaimed. The "as is" and "with all faults" disclaimers are possibly effective to disclaim *implied warranties* unless circumstances indicate otherwise. However, the "circumstances" mentioned in the Code are not defined. Moreover, a general disclaimer of warranties may be ineffective if unreasonable. 12A O.S.1991, § 2–316(1).[7] This is consistent with Comment 4 of 12A O.S.1991, § 2–313 providing:

In view of the principle that the whole purpose of the law of warranty is to determine what it is that the seller has in essence agreed to sell, the policy is adopted of those cases which refuse except in unusual circumstances to recognize a material deletion of the seller's obligation. Thus, a contract is normally a contract for a sale of something describable and described. A clause generally disclaiming 'all warranties, express or implied' cannot reduce the seller's obligation with respect to such description and therefore cannot be given literal effect under section 2–316.

■ This Court holds that among the circumstances that could render a purported "as is" or "with all faults" disclaimer unreasonable and ineffective are fraudulent representations or misrepresentations concerning the condition, value, quality, characteristics or fitness of the goods sold that are relied upon by the Buyer to the Buyer's detriment. Therefore, if the disclaimer of the implied warranties of fitness for a particular purpose

and merchantability are tainted with, or by, such misrepresentations or false representations, that then is a "circumstance" that will preclude an effective disclaimer. To hold otherwise would allow a seller to profit from his fraud and to be effectively granted a license to mislead or conceal facts.

When a plaintiff presents evidence of such misrepresentations or false representations in a case involving a purported exclusion of implied warranties by use of "as is" or "with all faults" language, a series of questions to be resolved by the jury is then presented. The first is whether there is in fact underlying fraud. The second, if the jury finds that underlying fraud exists, is whether, because of such fraud, the implied warranties of fitness and merchantability are effectively excluded. Third, if the jury finds that the implied warranties are not excluded it may then consider and determine whether the circumstances constitute a breach of these warranties that justifies revocation under the nonconforming criteria.

■ Murray's evidence presented at trial was sufficient to defeat the interposed demurrer and also to submit the above question of breach of warranty as a basis for revocation to the trier of fact, the jury.

## IV. FRAUD

Murray also asserted fraud. ..

■ "Fraud" is a generic term. It includes every means that one may invent to gain unfair advantage over another whether by false suggestions or suppression of material truth. 15 O.S.1991, §§ 57–59; 76 O.S. 1991, § 3; *Wright v. Cies,* 1982 OK CIV APP 5, 648 P.2d 51. Fraud includes all surprise, trick, cunning, dissembling and any unfair way by which another is cheated. *Stapleton v. Holt,* 207 Okla. 443, 250 P.2d 451 (1952).

■ Murray's testimony encompassed material misrepresentations, assurances and nondisclosures by D & J representatives. She testified, without rebuttal, about her reli-

---

7. 12A O.S.1991, § 2–316(1) provides:

(1) Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with

each other; but, subject to the provisions of this article on parol or extrinsic evidence (Section 2–202) negation or limitation is inoperative to the extent that such construction is unreasonable.

ance on the representations by defendant's personnel and that she decided to make the purchase based upon her reliance.· She presented evidence in support of each element of fraud.[8] The evidence need not be clear and convincing to avoid a demurrer to the evidence but need only touch on each element and lead to an irrestible deduction of fraud. *Silk v. Phillips Petroleum Co.*, 1988 OK 93, 760 P.2d 174; *P.E.A.C.E. Corp. v. Oklahoma Natural Gas Co.*, 1977 OK 168, ¶ 18, 568 P.2d 1273.

■ The existence of fraud, given evidence for each element, is a question of fact for the jury. *Silk v. Phillips Petroleum Co.*, 1988 OK 93, 760 P.2d 174; *P.E.A.C.E. Corp. v. Oklahoma Natural Gas Co.*, 1977 OK 168, 568 P.2d 1273.

■ Fraud and deceit provide a ground for recovery that is independent of contract or UCC.[9] *Z.D. Howard Co. v. Cartwright*, 1975 OK 89, ¶¶ 17–19, 537 P.2d 345, 347–348. Disclaimer of warranties is not material to a fraud action. *Ozark Kenworth, Inc. v. Neidecker*, 283 Ark. 196, 672 S.W.2d 899; *Tinker v. De Maria Porsche Audi, Inc.*, 459 So.2d 487 (Fla.Dist.Ct.App.1984); *Slusher v. Jack Roach Cadillac, Inc.*, 719 S.W.2d 880 (Mo.Ct.App.1986); *DeLong v. Hilltop Lincoln–Mercury, Inc.*, 812 S.W.2d 834 (Mo. Ct.App.1991) (including use of "as is"). A sale under an "as is" clause does not grant the seller a license to mislead buyer or conceal facts. *Maybee v. Jacobs Motor Co.*, 519 N.W.2d 341, 344 (S.D.1994). Determination of whether Murray ought to recover, after weighing the evidence in light of any defensive material, is a question for the jury.

■ The defendants assert Murray could have discovered the true vehicle condition following the test drive by having an independent inspection. · However, a buyer may act on a seller's positive representations of material facts even though the means of learning the truth is available. *Greene v. Humphrey*, 1954 OK 247, 274 P.2d 535; *Mulkey v. Morris*, 1957 OK 168, 313 P.2d 494. The question for the jury is whether the buyer was deceived. *Welge v. Thompson*, 103 Okla. 114, 229 P. 271 (1924).

■ Fraud, if practiced by a seller, cannot be avoided on the ground that seller has disclaimed the very matter out of which the fraud arises. *See, P.E.A.C.E. Corp. v. Oklahoma Natural Gas Co.*, 1977 OK 151, 568 P.2d 1273, in which a "waiver of defense" clause in a contract was ineffective to bar a fraud claim.

## V. OKLAHOMA CONSUMER PROTECTION ACT

Murray's third claim alleged a right to recover under the Oklahoma Consumer Protection Act (15 O.S.1991, § 751 et seq.).[10] The Act declares certain practices to be unlawful and provides a private civil remedy. 15 O.S.1991, §§ 753, 761.1.

Murray maintains that liability may be imposed on D & J for its "deceptive trade practice" and "unfair trade practice". The Act defines these phrases in Section 752(11) and Section 752(12).[11]

However, the civil private remedy provided in Section 761.1 applies to "commission of any act or practice declared to be a violation" of the Act. Section 753 of the Act lists specif-

---

8. The elements of fraud are set out in *Whitson v. Oklahoma Farmers Union Mut. Ins. Co.*, 1995 OK 4, 889 P.2d 285 and *Silk v. Phillips Petroleum Co.*, 1988 OK 93, ¶ 12, 760 P.2d 174, 176–177.

9. The UCC recognizes a fraud action. However, a plaintiff may be required to elect between damages for breach of warranty and recission of the contract. 12A O.S.1991, §§ 1–103, 1–106, 2–721; *Z.D. Howard Co. v. Cartwright*, 1975 OK 89, ¶ 27, 537 P.2d 345, 349.

10. The purchase occurred on April 3, 1996. Therefore, the amendments effective July 1, 1996, are not applicable.

11. 15 O.S.1991, § 752(11) and § 752(12) provide:

11. 'Deceptive trade practice' means a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person. Such a practice may occur before, during or after a consumer transaction is entered into and may be written or oral;

12. 'Unfair trade practice' means any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

ic acts or practices "declared" to be in violation. This list does not specifically include the all encompassing phrases "deceptive trade practice" and "unfair trade practice" although the practices condemned could fall within the scope of the respective definitions. *See,* 25 O.S.1991, § 2.[12]

The Act's private civil remedy affords the consumer a recovery for actual damages sustained. The Act does not specify when the representation must take place or that the consumer rely upon the representation. In fact, a "deceptive trade practice" can occur "before, during or after a consumer transaction is entered and may be written or oral." 15 O.S. Supp.1994, § 752(11). This necessarily includes any of the subclasses of deceptive trade practices specifically "declared" to be in violation of the Act.

In order to avail herself of the civil private remedy (exclusive of any penalty provisions) in the Act, Murray must show:

1. She is a consumer and a consumer transaction is involved;

2. The Defendants engaged in some specific practice or act declared under Section 753 of the Act to be a violation;

3. She was aggrieved by the commission of the act; and

4. The actual damages sustained by her as a result of the commission of the condemned act or practice.

■ The question here is whether there are fact questions relative to the Act which the jury should resolve. If Murray presented evidence under the Act that will support a claim, then a demurrer to that evidence would be erroneous.

Record review shows that Murray did present evidence consistent with her status as a consumer involved in a consumer transaction.

Evidence was also presented concerning D & J's representations about the character (nothing wrong with the vehicle engine replaced), usefulness (inspected and works fine), and benefit (reliability) of the vehicle.

The Act declares that the making of a false or misleading representation, knowingly or with reason to know, as to the characteristics, uses, or benefits of the subject of the transaction to be a violation. 15 O.S.1991, § 753(5). An inference can be made that the defendants had knowledge about the vehicle condition based upon the representation that D & J had the vehicle inspected by a mechanic.

Murray presented evidence of her actual damages and the manner of her aggrievement—denial of reliable transportation for her daughter.

D & J responds that Murray knew about the vehicle's condition and that it disclaimed any warranty. Neither position is a defense to a claim under the Act. The Act condemns specific practices. In order to defeat a claim under the Act the defense must demonstrate that the plaintiff's evidence lacks proof of some element or that the plaintiff's proof is insufficient to prove a violation. The Trial Court, in sustaining the demurrer to the evidence, erred.

## VI. CONCLUSION

After examination of the record, we hold the Trial Court erred in sustaining a demurrer to the evidence.

In view of the results reached the issue of whether Murray was inappropriately denied a right to further examine a witness is not decided.

The order of the Trial Court is REVERSED AND REMANDED for further proceedings.

REVERSED AND REMANDED.

STUBBLEFIELD, P.J., and REIF, J., concur.

---

12. 25 O.S.1991, § 2 provides:
    Whenever the meaning of a word or phrase is defined in any statute, such definition is applica-

ble to the same word or phrase wherever it occurs, except where a contrary intention plainly appears.